BEAR LITHIA SPRINGS COMPANY, appellant,

*v.*

GREAT BEAR SPRING COMPANY, respondent.

[Argued March 18th, 1907.  Decided September 27th, 1907.]

The bill of complaint exhibited by the Bear Lithia Springs Company against the Great Bear Spring Company to enjoin the latter from using the word "Bear" or the picture of the animal of that name in connection with its sale of natural water is dismissed, for the reason that the defendant is not shown to have practiced any simulation of the complainant's title or trade mark, whereas the complainant itself has, by its own acts, created in great part the very confusion of which it complains.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bergen, whose conclusions are reported in *71 N. J. Eq. (1 Buch.) 595.*

*Mr. Gilbert Collins,* for the appellant.

*Messrs. Weller & Lichtenstein,* for the respondent.

The opinion of the court was delivered by

GARRISON, J.

The bill of complaint was filed in this cause by the Bear Lithia Springs Company, whose business is selling "Bear Lithia Water," to enjoin the Great Bear Spring Company, whose business is selling "Great Bear Spring Water," from applying the word "Bear" to the water so sold by it, and also from making any use of the said word or of the figure of a bear in connection with its said business, upon the ground that such practices by the defendant result in unfair competition from which the complainant has the right to be protected by injunction.

The learned vice-chancellor who heard the cause advised that the complainant's bill be dismissed without regard to its merits,

because the statement "bottled at the springs" on the complainant's letterheads and on some of its labels was not in all respects true, and also because certain of its advertised statements touching the therapeutic efficacy of the water itself were not borne out by the testimony.

We are not convinced of the propriety of the application that was thus made by the vice-chancellor of the ethical maxim of "clean hands" to the circumstances of the present case, but refrain from an extended discussion of the considerations that seem to us to be involved, for the reason that from our examination of the case we have reached the conclusion that the complainant is not entitled to relief upon the merits of the controversy, and hence that the decree of the court of chancery dismissing the bill of complaint should be affirmed.

The salient facts relied upon by the complainant in support of its claim of unfair competition by the defendant are that the parties are both engaged in the business of selling natural water; that the name of the water sold by each contains the word "Bear;" that the labels and literature used by each display a picture of the animal of that name, and that the titles of the two corporations are sufficiently alike to lead to confusion in the public mind.

The equitable question is whether the defendant is unfairly profiting by these points of similarity.

The underlying facts necessary to the determination of this question are in part objective and in part historical.

Objectively the representations of a bear used by complainant and defendant respectively are as dissimilar as it is possible for them to be. The complainant's bear is black—in fact, is the common black American bear—and is depicted as standing upon all fours on *terra firma,* with the words "Bear Lithia Water" conspicuously displayed, in pure white letters, across its entire side. The defendant's bear, on the other hand, instead of being black, is white—is, in fact, the large white polar bear. Instead of being on all fours, it stands erect on its hind feet; instead of being on dry land it is in water in which ice is floating, or is crawling up on a floating cake of ice. Instead of presenting a side view it presents a front view, and instead of the lettering

used by the complainant it has no lettering at all.  In fine, if the effort of the defendant had been to depict a bear that could by no possibility be mistaken for the complainant's, that result could not have been more successfully accomplished.  So obvious is this fact that complainant is forced to make the claim that any use of any picture of any bear by the defendant in connection with the sale of water is an unwarranted intrusion upon a field already preempted by the complainant.  If this broad claim of the right to preempt an entire genus of animals by the earlier use of a single species could ever be supported, it still would not have the controlling effect claimed for it in the present case, for the reason that the name of the complainant's water was not taken at all from the animal whose entire genus it thus seeks to preempt, but from a mineral spring in Virginia that bore the name of its owner, which chanced to be Bear.  The testimony shows that as long ago as 1778 the spring from which the complainant's water comes, at or near Elkton, Virginia, was owned by a family named Bear, and that as recently as 1885 this spring was on the dividing line between the farms of Henry A. and Adam C. Bear, one of whose relatives was instrumental in having the first analysis of the water made.  The analysis thus made showing a trace of lithia, that word was added to the family name of Bear in speaking of the water and in its sale for those therapeutic purposes for which both lithia and the copious use of water were supposed to be efficacious.  So that "Bear Lithia Water," at that date and now, indicates merely that the water came from the spring owned by the Bear family, and that its curative properties are attributable, in part at least, to the presence of lithia.  In view of this history the adoption of the picture of the animal of the same name as the owners of the spring, while a perfectly legitimate and somewhat felicitous play upon words, lays no foundation for the broad claim of a preemption of the whole genus *ursus.*

Incidental reference has been made to the circumstance that the word "Lithia" came into the name of the complainant's water contemporaneously with its exploitation as a medicinal agent.  So firmly was this fact established before the learned vice-chancellor that it led him to deny any relief at all to the

complainant, because of the extravagant terms in which the therapeutic value of its lithia water was pressed upon the public. The significance of this fact·upon the merits of the case is that the defendant is now, and always has been, a dealer in potable table water for which no medicinal properties are claimed, so that so long as the public was being taught by the complainant to regard its lithia water as a medicament no practical confusion arose, as it would not naturally occur to anyone that a medicinal agent of the advertised potency of the complainant's could safely be used as a mere table water. Whatever confusion has arisen dates from the time when the complainant, in the exploitation of its water, began to advertise its general potable qualities and to introduce it as a mere table water. Hence the confusion of which the lithia company now complains was in reality caused by its own acts, and it must be fundamental in cases of unfair competition arising from confusion of goods that equity will not aid the party that has itself occasioned the confusion.

In another significant respect, also, the complainant has directly brought upon itself the confusion of which it complains, viz., in the insertion of the word "Springs" in its corporate title, thereby making it quite similar to the title previously adopted by the defendant.

In April, 1899, the defendant was incorporated in this state under the name of "The Great Bear Spring Company." At this time the complainant was carrying on business under the corporate title of the "Bear Lithia Water Company," a title which, by the absence of the word "Spring," was readily distinguishable from that of the defendant. But in August, 1899, the complainant also became incorporated in this state, and then inserted in its title the word "Springs," thereby bringing upon itself whatever of confusion arises from the similarity of the two corporate titles in that respect.

It thus appears that the defendant has been guilty of no scheme of simulation leading to confusion, but, on the contrary, has exhibited a studied effort to avoid such a result; but that the complainant, on the contrary, has, either wittingly or unwittingly, so shifted its business and changed its title as to be in fact responsible for the very confusion which it now sets up as the basis for equitable relief.

The fact has not been overlooked that on one occasion the defendant's water was advertised in connection with the picture of a black bear similar to the complainant's, but this picture was at once withdrawn, and the testimony satisfies us that its use was inadvertent and practically non-injurious to the complainant.

The complainant also contends that the defendant's use of the word "Bear" in "Great Bear Springs Water" is in effect a fraud perpetrated to injure complainant's business.

This contention derives its main support from the circumstance that the first concern that handled the Great Bear Springs water was a partnership that, under the firm name of "The Pure Water Supply Company," sold Great Bear Springs water under some sort of a license from the Fulton Water Supply Company. When the defendant acquired the rights of these two concerns in the sale of the Great Bear Springs water it took its corporate title from the already established name of the commodity in which it proposed to deal. So that whether in point of fact the water actually came from the Great Bear Springs is of little moment on the question of fraud. As a fact, the water was unquestionably named after a somewhat celebrated group of springs in Oswego county, New York, which as early as 1860 at least are shown by the testimony to have been called "The Bear Springs" or "The Great Bear Springs." The physical conditions affecting these springs were such that those at quite a distance from a given member of the group would be appreciably affected by conditions affecting the latter. This circumstance accounts for the extension of the name in a somewhat loose way to springs in the vicinage without any very great attempt at geodetic accuracy. The principal spring of the group had unquestionably been absorbed by the water works system at Fulton, which had licensed the predecessor of the defendant to sell water from more distant springs as Great Bear Springs water. Whether there is any direct physical connection between the defendant's spring and the original Great Bear Spring is a fact that is quite difficult to determine from the testimony and quite unimportant in its bearing upon the issue. The material fact is that, whether accurately or inaccurately from a hydrostatic

point of view, the defendant's water took its name under natural conditions that completely negative the notion of fraud or of any purpose of unfair competition as regards the complainant.

A review of the entire testimony satisfies us that the complainant has failed to make out a case of unfair competition, and as the decree of the court below was that the complainant's bill should be dismissed, we affirm that decree, for the reasons we have briefly indicated.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, PITNEY, SWAYZE, REED, TRENCHARD, VREDENBURGH, DILL—8.

*For reversal*—HENDRICKSON, BOGERT, VROOM, GREEN, GRAY —5.