51 N.J. Super. 412 (1958)
144 A.2d 172
THE GREAT ATLANTIC AND PACIFIC TEA COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
A & P TRUCKING CORPORATION, A NEW JERSEY CORPORATION, AND ARTHUR E. IMPERATORE, ARNOLD D. IMPERATORE, GEORGE IMPERATORE, EUGENE IMPERATORE AND EILEEN IMPERATORE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 31, 1958.
Decided July 28, 1958.
*414 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. John Milton, Jr., argued the cause for plaintiff-appellant (Messrs. Milton, McNulty & Augelli, attorneys; Messrs. Munn, Liddy, Daniels & March, and Messrs. Sylvester J. Liddy and Joe E. Daniels (of the New York bar), of counsel; Mr. Angelo A. Mastrangelo on the brief).
Mr. Milton T. Lasher argued the cause for defendants-respondents.
*415 The opinion of the court was delivered by FREUND, J.A.D.
The plaintiff, owner and operator of an extensive chain of retail food stores under the designation of "A & P," seeks an injunction against the use of those letters or symbol by the defendants, who are engaged in the business of a common carrier transporting general merchandise by motor vehicles. From the judgment of the Chancery Division denying relief except in a minor respect, the plaintiff appeals.
For the most part, the salient facts are not in dispute. The plaintiff has for many years used the letters "A & P" as a trade-mark on merchandise and as a trade name in the operation of its business. It was first registered as a trade-mark in 1885, although it has been used as a symbol since 1870. As a trade name, the symbol has been used in connection with various designations, such as "A & P Food Stores," "A & P Super Markets," and just "A & P," both with and without the ampersand, enclosed within a circle, on store fronts and every form of advertising medium. The distinctive design appears in Chinese vermillion coloring with the symbol, in most instances, in gold and silver. Plaintiff owns and operates a large fleet of trucks and engages contract carriers for the transportation of merchandise to its stores and warehouses. The "A & P" symbol is displayed upon its trucks and upon most of the trucks of its contract carriers, which together number about 9,000 vehicles. Plaintiff's gross annual sales currently are in excess of $4 billion.
In 1945 or 1946, a trucking business was conducted by the partnership of Amorino and Pangione, in West New York, N.J., under the name of "A & P Trucking Company." In April 1947 the defendant "A & P Trucking Corporation" was incorporated under the laws of this State by the Amorino family. In January 1947 the individual defendants, members of the Imperatore family, and a brother, now deceased, were also engaged in the trucking business as a partnership under the name of Imperatore Bros. Trucking Co., from the same address in West New York. In August 1947 the Imperatores purchased the stock of the defendant, A & P *416 Trucking Corporation, and until December 1948 they engaged in the trucking business under the partnership and corporation, but in December 1948 they transferred the partnership assets to the corporation and since then the trucking business has been conducted under the corporate name. Beginning with one or two trucks, the defendant now operates approximately 75 trucks and trailers, and in 1956 its gross business was in excess of $800,000.
Initially, the action was brought for injunctive relief and for damages and loss of profits, but at the beginning of the trial plaintiff abandoned its claim for money damages, and sought only to enjoin defendant from using the letters and symbol "A & P" on its trucks or otherwise. The basis of the complaint was plaintiff's claim to the exclusive proprietory right to the use of the letters and symbol "A & P," and that defendant's use thereof infringes upon plaintiff's rights, constituting unfair competition in that it has caused or is likely to cause confusion on the part of the public.
After a lengthy trial, the trial judge rendered an opinion in which for nineteen specific reasons he concluded that plaintiff was not entitled to the injunctive relief sought, but held that,
"in order that complete equity may be accomplished in the instant case, defendant corporation will be required to change its existing letterheads and envelopes so that no longer shall the letters `a. & p.' appearing thereon in small case type and separated by a space from and colored differently than the words `Trucking Corporation,' be used in that manner on defendant corporation's letterheads, envelopes or other media."
The court held that defendant's acquisition of the stock of A & P Trucking Corporation was accomplished in good faith and that there was no proof of any deception or fraud by defendants in their contact with the public. Summarizing the court's findings and determinations, they are that (1) the defendant's use of the letters "A & P" or "A" and "P" is in connection with and an integral part of its entire corporate title and not used with a circle around them or *417 in the distinctive design and lettering of the plaintiff; (2) at no time has defendant represented that it has any connection or affiliation with the plaintiff; (3) the parties are not competing in the mercantile market, plaintiff being engaged in the business of a retail grocer as it has been for about one hundred years and there being no suggestion that it is going to embark in the business of common carrier; the defendant sells no goods, but is a commercial shipper of freight by motor vehicle; (4) the businesses of the parties and their areas of operation are completely dissimilar; there is no identity of any kind between their customers, but they are separate groups, plaintiff's being housewives and defendant's shippers of merchandise; (5) there is no deception nor confusion nor likelihood thereof; the defendant's use of the letters "A & P" as part of its corporate name is so foreign to plaintiff's use of these letters for its wares and its stores as to render unlikely confusion of the identity of the two companies; (6) the plaintiff did not present proof of loss of a single customer nor any likelihood thereof, and plaintiff's trade is not in danger of harm due to the use by defendant of its corporate name; and "The near decade during which the defendant has used the designation in its business as a common carrier, minimizes the likelihood of mistaken association"; (7) the described operations of the parties are so unrelated that the good will and reputation of the plaintiff are not subjected to the defendant's business or market reputation.
To support its claim that defendant's use of the letters "A & P" upon its trucks is calculated to confuse and mislead the public to believe that they are vehicles of the plaintiff, the plaintiff presented evidence that on three occasions it received complaints of conduct by drivers mistakenly assumed to be plaintiff's employees: one, a telephone call or letter from an unidentified woman in 1949 or 1950, to the effect that while driving she had been "cut off" the highway by the driver of an "A & P" truck; another, that in 1955 an undisclosed person telephoned to complain that his car had been damaged; and lastly, that in 1955 a New York attorney *418 mistakenly instituted suit for property damage against plaintiff when he should have sued the defendant.
Plaintiff offered in evidence a report based upon an opinion poll conducted by Advertest Research Incorporated, an opinion research organization, indicating that a good percentage of those interviewed would confuse defendant's trucks with plaintiff's, but the report was excluded on the ground of hearsay and the exclusion is now argued by the plaintiff as being erroneous. Although the report itself was excluded, there was testimony by witnesses interviewed during the poll that they believed that the colored photographs of the defendant's trucks, used by the researchers in making the survey, showed plaintiff's vehicles. It is significant that each of these witnesses was a customer of the plaintiff and remained so after the interview. None of them testified to a negative reaction toward plaintiff when they discovered that the trucks were defendant's and not plaintiff's. There was testimony by two advertising experts, one of whom did some of plaintiff's advertising, that in their opinion plaintiff's good will and the value of its trade-mark would be "diluted" by defendant's use of its corporate name.
While the plaintiff argued that discourtesy or careless driving by defendant's drivers or unclean appearance of defendant's trucks may reflect unfavorably upon it, there was no proof of such behavior or of the dirty appearance of its vehicles, but there was proof that plaintiff attempted to maintain a certain standard of courtesy of its drivers and of the cleanliness of the trucks bearing its emblem.
The distinction between a trade-mark and a trade name is well defined, the former being applicable to a vendible article and serving to identify it, and the latter relating to a business and its good will. American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317 (1926). The plaintiff claims an exclusive proprietory right to the letters and symbol "A & P," both as a registered trade-mark used on merchandise which it sells and as a trade name under which its business is known.
*419 It has become common practice to refer to a corporation, its business and products or services, by an abbreviation of its full corporate name, as "A & P" for The Great Atlantic & Pacific Tea Co., as in the instant case, or "A.T. & T." for American Telephone & Telegraph, or "G.E." for General Electric, or "Lackawanna" for Delaware, Lackawanna and Western Railroad, to mention just a few. These have become valuable trade names and are entitled to protection in an appropriate case. Delaware, Lackawanna and Western Railroad v. Lackawanna Motor Freight Lines, Inc., 117 N.J. Eq. 385 (Ch. 1934); 1 Nims, Unfair Competition & Trade-Marks (4th ed. 1947), §§ 87-88, p. 259.
It is undisputed that the plaintiff has a valuable right in the trade name "A & P" through prior use and that good will has been acquired over the years through the expenditure of vast sums for advertisements, its selling policy and the quality of its merchandise. Unquestionably, the letters "A & P" as applied to the sale of food products have attained a secondary meaning. Squeezit Corp. v. Plastic Dispensers, 31 N.J. Super. 217 (App. Div. 1954).
The fact that the defendant has been incorporated under the name A & P Trucking Corporation does not afford an immunity from action if the name adopted is used to compete unfairly with the plaintiff or to depreciate plaintiff's good will and business reputation. Bear Lithia Springs Co. v. Great Bear Spring Co., 71 N.J. Eq. 595 (Ch. 1906), affirmed 72 N.J. Eq. 871 (E. & A. 1907).
The basic issue here is whether the defendant's use of the letters "A & P" as part of its corporate name in the conduct of its business constitutes unfair competition, and, if so, whether under the circumstances the plaintiff is entitled to injunctive relief.
Here, there is no competition between the parties. They operate in wholly different spheres. Heretofore, proof of actual competition was an indispensable prerequisite for injunctive relief. National Grocery Co. v. National Stores Corp., 95 N.J. Eq. 588 (Ch. 1924), affirmed 97 N.J. Eq. 360 (E. & A. 1924); Baltimore v. Clark, 131 N.J. Eq. 290 *420 (Ch. 1942), affirmed 132 N.J. Eq. 374 (E. & A. 1942); Morgenstern Chemical Co. v. G.D. Searle & Co., 150 F. Supp. 726 (D.C.D.N.J. 1957). Under the better view, which our courts have approved, the tendency is to widen the ambit of protection to the prior user of a trade name against non-competitors who engage in unfair competition. The test is the likelihood of confusion or deception among actual or prospective customers of the plaintiff. Where the necessary and probable tendency of the defendant's simulation or resemblance of plaintiff's trade name is to mislead the public into believing that the defendant's business is that of or connected with plaintiff's, then neither actual confusion nor actual fraudulent intent need be shown, for the court is then concerned with the consequences of defendant's act and not the motive for them. Eureka Fire Hose Co. v. Eureka Rubber Mfg. Co., 69 N.J. Eq. 159 (Ch. 1905), affirmed 71 N.J. Eq. 300 (E. & A. 1906); Cape May Yacht Club v. Cape May Yacht & Country Club, 81 N.J. Eq. 454 (Ch. 1913); 51 West 51st Corp. v. Roland, 139 N.J. Eq. 156 (Ch. 1946); Goldscheider v. Schnitzer, 3 N.J. Super. 425, 429 (Ch. Div. 1949); American Shops, Inc., v. American Fashion Shops of Journal Square, Inc., 13 N.J. Super. 416 (App. Div. 1951), certification denied 7 N.J. 576 (1951); Annotation, 148 A.L.R. 12 (1944); 2 Nims, op. cit., supra, § 374, p. 1194.
The rule is thus stated in Restatement, Torts, § 730, comment (a), at p. 597 et seq.:
"One's interest in a trade-mark or trade name came to be protected against simulation, therefore, not only on competing goods, but on goods so related in the market to those on which the trade-mark or trade name is used that the good or ill repute of the one type of goods is likely to be visited upon the other. Thus one's interest in a trade-mark or trade name is protected against being subjected to the hazards of another's business."
The limitations of protection are declared in comment (b) of the same section, at page 599, as follows:
"While the class of goods, services or businesses with reference to which the interest in a trade-mark or trade name is protected has *421 been greatly expanded, the class is nevertheless limited. The interest is not protected against the use of a similar designation for any goods, services or business. It is protected only within the limits fixed by the likelihood of confusion of prospective customers. The issue in each case is whether the goods, services or businesses of the actor and of the other are sufficiently related so that the alleged infringement would subject the good will and reputation of the other's trade-mark or trade name to the hazards of the actor's business. * * *"
The enterprises of the parties may be radically different or the areas of operation too remote to occasion any probable injury and thus equitable intervention against the use of a similar trade name would be unwarranted. Englander v. McKesson, 120 N.J. Eq. 480 (Ch. 1936); Beech-Nut Packing Co. v. P. Lorillard Co., 273 U.S. 629, 47 S.Ct. 481, 71 L.Ed. 810 (1927); Charles Broadway Rouss, Inc., v. Winchester Co., 300 F. 706 (2 Cir. 1924); Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corp., 105 F.2d 908 (2 Cir. 1939), certiorari denied 308 U.S. 616, 60 S.Ct. 262, 84 L.Ed. 515.
In the Emerson case, supra, 105 F.2d at pages 909-910, Judge Learned Hand declared:
"The doctrine upon which the plaintiff must rely is an outgrowth from the general principles of unfair competition. It depends upon two supposititious interests which the putative wrongdoer invades. One of these is, not in any sales of which he will deprive the plaintiff at the time, for the plaintiff is not selling any of the wares in question, but in those sales which the plaintiff will lose in case he chooses to extend his business into the market which the wrongdoer has begun to exploit. In the case at bar the defendants will not take away any customers from the plaintiff, unless the plaintiff begins to sell radios, and, * * * it has no such purpose, for the present at least. The other interest is the plaintiff's general reputation which goes with his name. Buyers from the putative wrongdoer may also buy from the plaintiff, and may confuse the two; the plaintiff will not wish to expose his reputation to the chances of the wrongdoer's conduct of his business."
There the court denied an injunction, although, as the trial judge remarked (24 F. Supp. 481, 486 (D.C.D.N.Y. 1938)), "* * * it is quite possible, and perhaps likely, that some few people might be confused but not enough, in *422 my judgment, to amount to anything serious." And, Judge Hand declared (105 F.2d, at page 910), "* * * nothing, with the exception of a single postcard, has as yet come to light to indicate that the plaintiff has suffered in public esteem. So far as appears, the defendants carry on their business in an entirely respectable way * * *." Both of these latter observations are particularly applicable to the instant case. See also S.C. Johnson & Sons, Inc., v. Johnson, 175 F.2d 176 (2 Cir. 1949), certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949). In Johnson, as in the case sub judice, there was no suggestion that defendant had in fact tarnished plaintiff's name in the minds of those who might have thought that defendant's business was connected with that of the plaintiff.
From our independent study of the record, we find that the conclusions of the trial judge are entirely consistent with and fully supported by the evidence. We are in accord with his determination that the parties function in altogether different and remote areas of commerce; there has been no deception by the defendant; there is no likelihood of confusion by actual or prospective customers of the plaintiff to its prejudice; and even conceding that some persons believed the trucks of the defendant had some connection with the plaintiff, the incidents have been so few and inconsequential as hardly to justify injunctive intervention, particularly in view of the evidence that plaintiff has suffered no pecuniary loss nor loss in reputation.
Plaintiff relies particularly on two cases in which it was the plaintiff: (1) Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, Inc., 20 F. Supp. 703 (D.C.E.D. Pa. 1937), and (2) Great Atlantic & Pacific Tea Co. v. A & P Cleaners & Dyers, Inc., 10 F. Supp. 450 (D.C.W.D. Pa. 1934). These cases are readily distinguishable from the facts here. In the former, the defendant deliberately imitated plaintiff's insignia with letters, circular design and adopted slogans for its store windows designed to give the public the impression of affiliation with the plaintiff, to wit: "[T]he name A & P assures you satisfaction," and "A & P reputation *423 deserves your patronage." In the latter case, the defendant deliberately directed sign painters to make exact copies of plaintiff's insignia; and further, defendant's employees represented to customers that it was in fact a branch of or connected with the plaintiff.
Plaintiff also stresses Safeway Stores, Inc., v. Safeway Construction Co., Inc., 74 F. Supp. 455 (D.C.S.D. Cal. 1947). There the plaintiff operated an extensive food chain and an integral and substantial part of its business was construction work in connection with its stores and warehouses. The defendant, engaged in the business of construction, was incorporated on March 13, 1946; on March 26, 1946 plaintiff forcefully requested defendant not to use its name and upon defendant's failure to desist, immediately instituted suit. In the latter respect, at least, the facts are clearly distinguishable from the instant case.
Because we, in the exercise of our equitable powers, will slightly modify the judgment on appeal as discussed infra, we necessarily treat the issue of laches. Generally laches is not a bar to injunctive relief against unfair competition. American Shops, Inc., v. American Fashion Shops, supra (13 N.J. Super., at page 432); 2 Nims, op. cit., supra, § 409, p. 1289. Allowance of this defense might lead to the result that the public would continue to suffer the deceit or misapprehension which the law seeks to prevent. However, the application of the facts to the merits of the question presented shows that the defense would be unavailable to the defendant in any event. When the plaintiff first discovered the use of the symbols "A & P" in connection with a trucking business, it was at a time when the defendant's predecessor was using it in an unincorporated business. The evidence discloses that upon communication with the then users of the symbols, plaintiff was informed by their attorney that the A & P Trucking business was a small three-truck operation, expected then to go out of business. This, in fact, did happen, but prior to the dissolution and cessation of operations, the defendant's predecessor incorporated under its present name. No further correspondence was had between *424 the parties after the assurance given by defendant's predecessor of the impending dissolution. It seems that the first time plaintiff was aware of the new and increased activity of the defendant was when it acted promptly in starting proceedings resulting in this litigation.
With reference to the report of the survey or poll of the opinion of some 1,100 persons allegedly interviewed by the opinion research organization employed by the plaintiff concerning their association of the pictures of defendant's vehicles with the plaintiff corporation, the court declined to receive it as evidence on the ground of its being hearsay. Elgin Nat. Watch Co. v. Elgin Clock Co., 26 F.2d 376 (D.C. Del. 1928); John B. Stetson Co. v. Stephen L. Stetson Co., 14 F. Supp. 74 (D.C.S.D.N.Y. 1936), modified and affirmed 85 F.2d 586 (2 Cir. 1936), certiorari denied 299 U.S. 605, 57 S.Ct. 232, 81 L.Ed. 446 (1936); Procter & Gamble Co. v. Sweets Laboratory, Inc., 53 U.S.P.Q. 67 (1942), affirmed 137 F.2d 365 (C.C.P.A. 1943). Contra, United States v. 88 Cases, More or Less, 187 F.2d 967 (3 Cir. 1951), certiorari denied 342 U.S. 861, 72 S.Ct. 88, 96 L.Ed. 648 (1951); Procter & Gamble v. J.L. Prescott Co., 102 F.2d 773 (3 Cir. 1939). Legal scholars are of the opinion that such a poll, if properly qualified, should be admitted into evidence and not excluded on the ground of hearsay. Sorensen & Sorensen, "Opinion Research Evidence," 28 N.Y.U.L. Rev. 1213, 1231 (1953); Note, 66 Harv. L. Rev. 498, 501 (1953). The admissibility of the evidence is proposed on the theory that it is not hearsay since it is not offered for the truth of the facts stated therein, but instead to show the state of mind of the declarants and therefore, when statistically accumulated, reflects public reaction concerning the substantive problem which is itself material to the merits of the case. Herrmann v. Newark Morning Ledger Co., 48 N.J. Super. 420, 448 (App. Div. 1958); 28 N.Y.U.L. Rev., supra, at p. 1233; 66 Harv. L. Rev., supra, at p. 503, McCormick, Evidence (1954), § 268, p. 567; 6 Wigmore, Evidence (3d ed. 1940), §§ 1725 to 1731, pp. 79 to 98. An additional ground which is soundly *425 advanced for admissibility of public opinion polls is that founded upon simple expediency. The necessity for the evidence outweighs the lack of opportunity for cross-examination. 66 Harv. L. Rev., supra, at p. 503. Under appropriate circumstances, surveys of this nature may be admitted upon an authentic foundation being laid for the manner of the formulation of the result of the poll as in any other expert evidence. In the instant case, the exclusion of the report did not constitute harmful error because testimony of the nature indicated was given in court by some of the persons actually interviewed in the poll, and because the result of the poll would not affect our conclusion on the merits.
The judgment dismissed the complaint, subject to the condition that the defendant corporation change its existing letterheads, envelopes and other media, so that the letters "a & p" would not appear thereon in small-case type and separated by a space from and colored differently than the words "Trucking Corporation." We observe from the exhibits received in evidence that the defendant's trucks in some instances use the symbols "A & P" not in conjunction with the rest of the corporate name. We herewith modify the judgment in conformance with the spirit of the trial judge's determination: that in addition to the restraint imposed by him, wherever the letters "A & P" are used by the defendant, whether on trucks or otherwise, they must be accompanied with the words "Trucking Corp." or "Trucking Corporation," in equal size and style of lettering. In all other respects the judgment is affirmed.