**Mike S. DAWSON and Patricia E. Dawson, Appellants (Defendants),**

v.

**Patrick W. LOHN, Appellee (Plaintiff).**

No. 83–225.

Supreme Court of Wyoming.

Aug. 30, 1985.

Patrick M. Hunter, Law Offices of Georg Jensen, Cheyenne, for appellants.

Robert W. Costin, Laramie, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

THOMAS, Chief Justice.

The problem posed in this case is whether, in the context of a disposition by summary judgment, a contract which conveys a trade name is ambiguous because that term might also allude to a trademark thereby requiring the district court to consider evidence apart from the contract documents to the effect that the parties contemplated a transfer of a trademark. We agree with the district court that this contract is not ambiguous and is susceptible to the rule that construction of such a contract is a matter of law for the court. The terms trade name and trademark are distinguishable legal terms of art. The summary judgment in favor of the business seller for the balance due on the purchase price is affirmed.

Mike S. Dawson and Patricia E. Dawson, the appellants, who were the purchasers of a sandwich shop business, state the issues in this appeal in this way:

"1. Should the district court have considered parol or extrinsic evidence offered to show that the parties to the contract in question agreed to a transfer of a trademark along with the transfer of the business.

"2. Should the district court have granted the plaintiff's motion for summary judgment."

Patrick W. Lohn, the seller in the transaction, articulates the issues inversely and somewhat differently:

"1. Whether or not the District Court erred in granting a Summary Judgment against Dawson and in favor of Lohn on the Promissory Note.

"2. That the Court did not err in refusing to admit parole [sic] evidence and took the position that the contract documents stood for themselves."

The focal question is whether a reference to a "trade name" in the contract documents inherently is ambiguous because it potentially refers to a "trademark."

The Dawsons argue that the contract is ambiguous and that they should have been permitted to present information in addition to the contract documents to prove that the parties intended to include the transfer of a "trademark." The additional evidence would be significant for their purposes because it would support their contention that Lohn did not perform his obligations under the contract and should not be entitled to recover on his claim for the balance due upon the sale of the business. Furthermore, this evidence would support their counterclaim for damages for breach of the contract and fraud. The Dawsons claim that since the written contract is ambiguous the offered proof would present a question of material fact with respect to the subject matter of the contract and also would support their claim of fraud in the inducement of the contract entitling them to a recovery on their counterclaim. Lohn's position is that the parties contracted only for a trade name and there is no ambiguity which permits the introduction of the suggested evidence by the Dawsons. Under Lohn's theory there was no issue of material fact which would prevent the entry of summary judgment in his favor as a matter of law.

In January of 1981 the Dawsons agreed to purchase and Lohn agreed to sell a business known as "My Hero Sandwich Shop" in Laramie, Wyoming. The basic document was denominated a lease, but the parties do not disagree with the proposition that a sale of the business was their real purpose. Four documents were executed to evidence the transaction: (1) a "Lease"; (2) a Security Agreement and Financing Statement—Form UCC–105; (3) a promissory note; and (4) a Bill of Sale. None of these documents make any reference to a trademark. In the "Lease" paragraph 6a provided as follows:

"6a. This lease and subsequent sale includes any property rights or rights of any kind in the trade name of "My Hero" and "My Hero Sandwich Shop" belonging to Lessor."

In the Bill of Sale the property transferred was described as follows:

"All of the inventory, personal property, accounts receivable, goodwill of the business known as My Hero Sandwich Shop, 305 Grand Avenue, Laramie, Wyoming, and any property rights or rights of any kind in the trade name of "My Hero" and "My Hero Sandwich Shop." "

The Dawsons made some 26 payments of $600 each according to the note, although some of the payments were made late. Lohn ultimately became dissatisfied with the manner in which the payments were made and invoked the acceleration clause found in both the security agreement and financing statement and the promissory note. Lohn then brought this action to recover the balance due on the note plus interest. The Dawsons in their answer asserted as an affirmative defense failure of consideration. In addition the Dawsons filed a counterclaim in which they contended that Lohn had agreed to transfer a trademark which he had represented as having been registered as a national trademark. Based upon the alleged failure of Lohn to perform and the asserted representation concerning the trademark, the Dawsons claimed failure of consideration and fraud, and requested damages including punitive damages in the total amount of $150,000. With the issues thus joined Lohn then filed a motion for summary judgment

supported by his affidavit asserting that payment had not been made according to the contract documents and presenting the four contract documents described above. In a counter-affidavit, Mike S. Dawson did not contest the fact of nonpayment, but he did assert that Lohn had represented that the name "My Hero" had been or soon would be a registered national trademark and that the Dawsons were purchasing that trademark as well as the other assets. He also stated in the affidavit that no assignment of any trademarks from Lohn had been made and that he had discovered that no trademarks existed.

The district court, upon hearing the motion for summary judgment, apparently concluded that the four documents represented an integrated contract which was not ambiguous and therefore was not subject to being construed in the light of evidence apart from those documents. The court then found that there was no issue of material fact with respect to the contract and the failure to pay on the part of the Dawsons. Summary judgment was entered for Lohn for $4,240, together with interest in the amount of $284 and costs in the amount of $25. An application to set aside the order of summary judgment on the part of the Dawsons was denied by the court, and this appeal then was taken.

■ The Dawsons have no quarrel with the proposition that an integrated written contract may be found even though it is included in more than one document. In *Busch Development, Inc. v. City of Cheyenne*, Wyo., 645 P.2d 65 (1982), we found a contract did exist composed of a series of letters. An agreement may consist of one or more than one document. *Busch Development, Inc. v. City of Cheyenne*, supra; *Allen v. Allen*, Wyo., 550 P.2d 1137 (1976). They argue, however, that the words "trademark" and "trade name" are words which to lay people connote the same subject matter, and which can overlap in their definitions, and therefore a reference to trade name in the contract documents is ambiguous. This is the premise from which they contend that they were entitled

to present evidence apart from the contract documents to show that the parties intended to contract with respect to a trademark as well as a trade name.

While a trademark may be composed of words, it still appears that a trademark is readily distinguishable from a trade name. Section 40–1–101(a), W.S.1977, provides:

"(a) The term 'trademark' as used herein [§§ 40–1–101 to 40–1–114] means any word, name, symbol, or device or any combination thereof adopted and used by a person *to identify goods made or sold by him and to distinguish them from goods made or sold by others."* (Emphasis added.)

Section 40–2–101(a)(iv), W.S.1977, provides:

"(iv) 'Trade name' means a word, name, or any combination of the foregoing in any form or arrangement used by a person *to identify his business, vocation, or occupation and distinguish it from the business, vocation or occupation of others."* (Emphasis added.)

As long ago as 1945 this court discussed the distinction between trademarks and trade names. In *Bernstein v. Friedman*, 62 Wyo. 16, 160 P.2d 227 (1945), a judgment was entered in favor of plaintiff Western Ranchman Outfitters enjoining the defendant from using a sign which read "Western Outfitters" and had a picture of a ranchman between the two words. In affirming the judgment this court said:

" * * * The terms adopted constitute a trade name, not a trade-mark, as technically known. The distinction is pointed out in 52 Am.Jur. 512, where it is said that: 'It may be stated generally that a trademark relates chiefly to the thing sold, while a tradename involves also the individuality of the maker not only for protection in trade and to avoid confusion in business, but also to secure the advantages of a good reputation. In other words, a trademark is applicable to the vendible commodity to which it is affixed, while a trade name is applicable to a business and its good will.' Nims on Unfair Competition and Trade-Marks, p. 386, states that trade-marks and trade

names to a certain extent overlap. 'One distinction is that a trade-mark "is applicable only to a vendible article of merchandise to which it is affixed," while "a trade-name relates to a business and its good will rather than a vendible commodity." "Trade-name" has, however, a somewhat broader meaning than this, although it is not really capable of exact definition. It includes, in general, names which perform the function of trademarks, but which are not susceptible of being set apart to the exclusive use of one concern.' On p. 81, the same authority states that: 'A business or trade name is one that identifies a particular concern, or the goods of one concern. When such a name is fanciful it is a trade-mark. Where it is a word in the public domain but used in a trade sense, it is a trade name.' See also 3 Restatement of the Law of Torts, § 716 and Comment A. Section 117–101, Rev.St. 1931, protects 'a label, trade mark, stamp or form of advertisement.' The term 'trade name' is not specifically used. But the trade name used by the plaintiff as well as the sign complained of, used by the defendant, may both be said to be a 'form of advertisement,' so that we are not prepared to say that the statute did not intend to cover the situation here involved. * * *" *Bernstein v. Friedman,* supra, 160 P.2d at 228.

The discussions of trade names found in two more recent cases, *Wyoming National Bank of Casper v. Security Bank and Trust Company,* Wyo., 572 P.2d 1120 (1977), and *First National Bank v. First Wyoming Savings and Loan Association,* Wyo., 592 P.2d 697 (1979), follow and support the generally accepted proposition that a trade name is something different from a trademark. E.g., *American Steel Foundries v. Robertson,* 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317 (1926); *Balesteri v. Holler,* 151 Cal.Rptr. 229, 87 Cal.App.3d 717 (1978); *Gordy v. Dunwoody,* 209 Ga. 627, 74 S.E.2d 886 (1953); *Great Atlantic & Pacific Tea Co. v. A & P Trucking Corp.,* 51 N.J.Super. 412, 144 A.2d 172 (1958); *Neva-Wet Corporation of America v. Nev-er Wet Processing Corporation,* 277 N.Y. 163, 13 N.E.2d 755 (1938); *Armington v. Palmer,* 21 R.I. 109, 42 A. 308, 43 L.R.A. 95, 79 Am.St.Rep. 786 (1898); and *Gluck v. Kaufman,* 117 W.Va. 685, 186 S.E. 615 (1936).

■ "Trade name" and "trademark" are legal terms of art. Different legal connotations do attach to them, and the reference to "trade name" in these contract documents did not result in any ambiguity and did not manifest any intention to make a trademark a part of the parties' transaction. In the Bill of Sale the reference to the trade name is coupled with the transfer of the goodwill of the business in such a way that the traditional application of that term obviously was intended.

■■ The Dawsons further argue, however, that even if the contract is not ambiguous they were entitled to produce their evidence to show fraud in the inducement with respect to the contract. In making this argument the Dawsons ignore the proposition that a misstatement of fact must be material to the transaction in order for a claim of fraud to lie. See *Reynolds v. Tice,* Wyo., 595 P.2d 1318 (1979); *McCamon v. Darnall Realty,* Wyo., 444 P.2d 623 (1968). Even if one were to assume that the parties had dialogue with respect to the existence of, the obtaining of, or the potential transfer of a trademark, the trademark was not a subject of the contract which they formalized by the written documents. A misrepresentation made with respect to some fact which is not a subject of the contract is not a material misrepresentation which will support a claim of fraud.

In *Johnson v. Soulis,* Wyo., 542 P.2d 867, 872 (1975), this court reiterated the requisites for fraud when we said:

"In Wyoming the elements of an action for fraud have been identified as a false representation by a defendant of material facts which are relied upon by a plaintiff to his damage. *Davis v. Schiess,* Wyo., 417 P.2d 19 (1966)."

**858**

We reviewed the definition of material fact in *Reoh v. Suchor Investments, Inc.,* Wyo., 699 P.2d 284, 286-287 (1985), in which we quoted *Johnson v. Soulis,* supra, 542 P.2d at 872:

" * * * [F]or the purposes of ruling upon a motion for summary judgment a fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. Such a fact would necessarily affect the application of the appropriate principle of law to the rights and obligations of the parties. In considering a motion for summary judgment it is appropriate for a court to identify the essential elements of the plaintiff's cause or of the defense asserted, and to then determine the materiality of any fact in the light of whether it will establish or refute one of those essential elements. If it does not have that effect, it would not be a material fact in the controversy, and a genuine issue with respect to that fact, no matter how sharp, would not foreclose the granting of a motion for summary judgment."

█ In the case at bar, the parties only contracted for the use of the trade name, and not the trademark. Thus, any representation concerning the existence of the trademark is not material since it does not establish or refute an element of the cause of action or a defense. The allegations concerning the trademark have no legal significance for the present action and the granting of summary judgment was proper.

The district court was correct in determining that in this instance there was no issue of material fact. It also is clear that Lohn was entitled to judgment for the unpaid balance on the purchase price, a fact not contested by the Dawsons, as a matter of law. Because a trademark was not a subject of the transaction between these parties, any representation with respect to a trademark was not material to any denial of a cause of action or a defense.

The summary judgment is affirmed.