# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 47

**OCTOBER TERM, A.D. 2014**

**March 26, 2015**

TRIANGLE CROSS RANCH, INC.,
GERALD E. SCHNEIDER and
MICHAELEEN SCHNEIDER,

Appellants
(Defendants),

v.                                                                S-14-0212

STATE OF WYOMING, WYOMING
DEPARTMENT OF FAMILY
SERVICES,

Appellee
(Plaintiff).

*Appeal from the District Court of Park County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellants:*
> Matthew D. Winslow of Keegan & Winslow, P.C., Cody, Wyoming.

*Representing Appellee:*
> Peter K Michael, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General. Argument by Ms. Kucera.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   Triangle Cross Ranch, Inc. (Triangle Cross) offered help to troubled boys by putting them to work on a cattle ranch and building Christian virtues through prayer.  The ranch's website stated that the ranch addressed behavioral issues "that are naturally helped through ranch life," including alcohol and drug abuse, ADD/ADHD, depression, narcissistic behavior, and others.  The boys' families paid a $2,500 admission fee and $6,000 monthly tuition for help with those types of behaviors, and they received "an 18 month guarantee: if your son resumes negative behavior after an 18 month stay at our ranch, we will take him back to our program for free."  The Wyoming Department of Family Services (DFS), believing that Triangle Cross was providing the type of services that required certification which the ranch had not obtained, sought an injunction.  After a bench trial, the district court entered an order enjoining Triangle Cross from operating an uncertified child caring facility in Wyoming.  Triangle Cross appeals and we affirm.

## ISSUES

[¶2]   The parties identify two issues on appeal, which we restate as:

1.   Did the district court correctly interpret the language of Wyo. Stat. Ann. § 14-4-102(b)(vii), which excepts ranches "not offering services" from the child caring facilities' certification requirement?

2.   Was there sufficient evidence to support the district court's conclusion that Triangle Cross was offering services to children who were delinquent or intellectually disabled?

## FACTS

[¶3]   Appellant Gerald Schneider has owned the property now operated as the Triangle Cross Ranch since 1973.  Mr. Schneider and his wife, Appellant Michaeleen Schneider, founded Mount Carmel Youth Ranch (Mount Carmel), a Wyoming nonprofit corporation, which operated at the same location to provide group home licensed services to troubled youths.  When the Mount Carmel board of directors decided to close the facility and turn in their license in November 2012, three or four Mount Carmel clients stayed on at the Schneiders' home and continued to help on the cattle operation, for which their families paid Mr. Schneider $4,800 a month.  Mr. Schneider "wanted to continue the good work that had been going on at Mount Carmel," so in December 2012, he applied to DFS for a license in the name of Appellant Triangle Cross.  The application is captioned "Application for Certification Substitute Care Services for Children," and it states: "In accordance with the provision of Wyoming Statutes §14-4-101 through §14-4-116, the undersigned hereby makes application for certification as a provider of substitute care

1

services for children." That application process was closed March 6, 2013, because Triangle Cross did not provide the information necessary for its completion.

[¶4] In July 2013, DFS was notified that there were children at Triangle Cross. Nicole Anderson, DFS substitute care program manager, first looked at the Triangle Cross website for information "regarding treatment, services provided . . . , just whatever might be perceived as something that the children would receive when they were at the facility." The website at that time listed, among other things, the types of therapy offered at Triangle Cross, including equine therapy, family therapy, reality therapy, substance abuse therapy, behavioral/emotional therapy, and Love & Logic Parenting Course.[1] The therapy list, in addition to the description of the kinds of teens they would serve—those with alcohol and drug abuse, rebelliousness, depression, narcissistic behavior, anxiety, ADHD, ADD—and the fact that the families paid a fee and tuition, led Ms. Anderson to believe that statutes and DFS rules required Triangle Cross to be licensed. The following week, Ms. Anderson and three other DFS employees visited Triangle Cross. There they encountered boys as well as staff, and then met with Mr. Schneider. Ms. Anderson testified that, after the visit, she was convinced that Triangle Cross was a facility that needed to be licensed, because, in addition to the types of services offered on the website, "they had children at the facility who were receiving services, who were working, who had staff supervision. . . . [O]ne of the requirements in the rules is -- for a group home is a certain staff, child ratio, and the children referred to the adults there as staff."

[¶5] On August 22, 2013, DFS sent Mr. Schneider a letter advising him that, by operating Triangle Cross as a child caring facility without a license, he was in violation of Wyo. Stat. Ann. § 14-4-102, and that he must cease operating the facility immediately or DFS would seek an injunction. The letter also suggested that Triangle Cross should submit an application to DFS, but noted that the Wyoming legislature had placed a moratorium on DFS's "authority to certify facilities based upon the number of facilities and the total capacity of all facilities in the state of Wyoming." On August 29, 2013, Mr. Schneider did submit a second application for certification, but the application was returned to him October 16, 2013, with a letter explaining DFS could not certify any additional facilities due to the legislative moratorium.

[¶6] Ms. Anderson reviewed the Triangle Cross website again in October 2013, and found it had been modified to remove references to certain therapies and services. The revised website described the ranch as "a Catholic Christian Therapeutic Residential Substance Abuse Treatment Program;" it advised that "[i]ndividual counseling is offered for behavioral health and drug/alcohol problems," as well as group therapy; and it continued to list among the types of behavioral issues "naturally helped through ranch

---

[1] Mr. Schneider testified that the website at that time had been carried over from the Mount Carmel website, and did not represent the services the Triangle Cross actually offered. When people applied, he would explain to them "what really was happening."

2

life," alcohol and drug abuse, ADD/ADHD, depression, narcissistic behavior, and anxiety. The admission fee remained at $2,500 but the tuition was raised to $6,000 per month. Also in October, Ms. Anderson and other DFS personnel revisited the ranch, where she observed that there were youth present at the facility.

[¶7]     Subsequent visits in January and March 2014, revealed that there were still children at Triangle Cross, and up until the time of the trial, May 19, 2014, the website continued to solicit young men with mental health and behavioral issues who would be helped by a stay at Triangle Cross.

[¶8]     Ms. Anderson further testified that she reviewed documents submitted by Triangle Cross in discovery, including the applications submitted by the boys at the facility. The applications included information such as psychiatric and psychological evaluations, "indications [] there were [] delinquents in terms of legal interaction with the child, run-ins with the law," and "several kids" with medications prescribed by a psychiatrist or counselor. Mr. Schneider testified regarding some children who had been accepted as students whose applications "had either psychological evaluations or letters from physicians attached to them," as well as a particular student whose application had attached to it his hospital discharge and treatment plan, and who arrived at the Triangle Cross with marks on his left arm from recent cutting.

[¶9]     Mr. Schneider testified that, while he recognized that the applications for certification he submitted to DFS described services that would require certification under Wyoming law, when he realized that the legislative moratorium would prevent certification, he "put a program together that would fit under the statute." He believed such a program could consist of "reality therapy," which he described as:

> Reality therapy is kind of self-explaining, really. I mean on a ranch, okay, you can't control mother nature. You can only work with her. Okay? That's reality. Okay? Now, a young man can get pretty frustrated because it's so stinkin[g] cold out. Okay?
>
> And getting dressed and being prepared and that kind of thing is a -- is a reality of the therapy. Maybe I've told him, don't you come out without your boots and your coveralls on, and then I catch him out there. Okay? Uh-huh. You turn around and go back to the house. He's going to listen to me because he's cold.
>
> . . . .
>
> It's inherently therapeutic.

[¶10] On redirect examination, it was pointed out that "reality therapy" was described in the July 2013 Triangle Cross website as "an approach to psychotherapy and counseling. It was developed by the psychiatrist, Dr. William Glasser, in 1965. Reality therapy is considered a cognitive behavioral approach to treatment." Mr. Schneider explained that was the old Mount Carmel website which had not yet been correctly revised to reflect what Triangle Cross actually provided.

[¶11] After a bench trial, the district court concluded that Triangle Cross was offering services that required it to obtain proper licensing and certification, and it entered an order permanently enjoining Triangle Cross from operating an uncertified child care facility. Triangle Cross timely filed its appeal.

## DISCUSSION

### I. Did the district court correctly interpret the language of Wyo. Stat. Ann. § 14-4-102(b)(vii), which excepts ranches "not offering services" from the child caring facilities' certification requirement?

[¶12] Triangle Cross argues on appeal that the district court erred when it concluded that Triangle Cross was not excepted from the statutory certification requirements. We apply a *de novo* standard of review to issues of statutory interpretation. *In re ARW*, 2015 WY 25, ¶ 11, 343 P.3d 407, 410 (Wyo. 2015). Wyo. Stat. Ann. § 14-4-102 is the governing statute.

> **Certification required; exceptions.**
>
> (a) All child caring facilities except those excluded in subsection (b) of this section, are required to be certified by the certifying authority before exercising care, custody or control of any minor.
>
> (b) W.S. 14-4-101 through 14-4-111 do not apply to:
>
> . . . .
>
> > (vii) Ranches or farms not offering services to children who are homeless, delinquent or have an intellectual disability[.]

Wyo. Stat. Ann. § 14-4-102 (LexisNexis 2013).

4

[¶13]  Triangle Cross concedes that it is a "child caring facility," but it contends it is a ranch "not offering services to children who are homeless, delinquent or have an intellectual disability."  The issues in this case are whether Triangle Cross is (1) "offering services," (2) to children who are delinquent or have an intellectual disability.

[¶14]  The district court relied on the definition of "services" in the DFS rules: "one or more organization-operated programs or activities having the common general objective and involving deployment of the organization's material and human resources in a planned and systematic manner."  Administrative Rules for Certification of Providers and Substitute Care Services for Children, ch. 1 § 6(bbb) (filed May 15, 2013).  Triangle Cross director, Michael Morso, testified that Triangle Cross 1) operates a program, 2) with a common general objective to help the boys, and 3) deploys the organization's materials and human resources to reach those objectives.  Mr. Morso was less clear on the "planned and systematic" element, given the shifting demands of ranch work.

[¶15]  Triangle Cross contends that reliance on the regulatory definition was misplaced because it is contrary to legislative intent.  Triangle Cross argues "[t]he only 'services' provided are showing the boys how to do 'whatever work needs to get done around the ranch[,]'" and if the opportunity to do ranch work is a "service," then the statutory exception for ranches and farms would be meaningless.  This argument ignores critical facts.  The purpose of having the boys do the ranch work is that it is "inherently therapeutic," and the intended result is that the boys will be "naturally helped" with "behavioral issues" such as alcohol and drug abuse, ADD/ADHD, depression, narcissistic behavior, anxiety, etc.  Although we agree with Triangle Cross that the certification applications it submitted to DFS are not necessarily evidence of the services it offered, even the most recently revised website[2] clearly offers help for troubled boys to overcome their "negative behavior."  That "help," in the form of "reality therapy," is the service offered by Triangle Cross, and it is a service for which the boys' families pay a considerable sum.

[¶16] Triangle Cross argues that this interpretation would result in a rule that would allow a rancher to have a healthy child stack hay, brand calves and move cattle on a ranch, but not a homeless, delinquent or intellectually disabled child, thus creating discrimination against "unfortunate" children.  The reality is that healthy people do not pay for the privilege of stacking hay.  The critical distinction is that Triangle Cross receives payment for allowing children to do their ranch work because they pledge that the end result will be a boy who has overcome his negative behavior.  We see no

---

[2] Triangle Cross argues that its website assurances are not an "offer" as that term is used in contract law.  We find no basis for applying contract law to these circumstances.  The website advertising was evidence from which the district court could reasonably infer that Triangle Cross would provide the kinds of services requiring a license to those responding to the advertising.

contradiction between the statutory language and DFS's definition of "service," and we affirm the district court's conclusion that Triangle Cross is offering services.

## II. Was there sufficient evidence to support the district court's conclusion that Triangle Cross was offering services to children who were delinquent or intellectually disabled?

[¶17] On review, this court assumes that the evidence in favor of the successful party is true. We leave out of consideration entirely the evidence presented by the unsuccessful party that conflicts with the evidence of the successful party, and we afford to the evidence of the successful party every favorable inference that may be reasonably and fairly drawn from it.

*Daley v. Wenzel*, 2001 WY 80, ¶ 24, 30 P.3d 547, 553 (Wyo. 2001) (quoting *Turcq v. Shanahan*, 950 P.2d 47, 51-52 (Wyo. 1997) (citations omitted)).

[¶18] While the district court relied on the dictionary definition of "delinquent," we agree with Triangle Cross that we should instead look to the statutory definition in Title 14 of the Wyoming Statutes. A "delinquent child" is a "child who has committed a delinquent act." Wyo. Stat. Ann. § 14-6-201(a)(x) (LexisNexis 2013). A "delinquent act" is "an act punishable as a criminal offense by the laws of this state or any political subdivision thereof[.]" Wyo. Stat. Ann. § 14-6-201(a)(ix) (LexisNexis 2013). Thus, a "delinquent child" is one who has committed an act punishable as a criminal offense. The definition does not require, as Triangle Cross contends, that a delinquent must be one who was "placed at the ranch in the course of juvenile delinquency proceedings[,]" and we decline to rewrite the statute to add such a requirement. "[A] court cannot, under the guise of its powers of construction, rewrite a statute, supply omissions, or make other changes[.]" *In re Adoption of Voss*, 550 P.2d 481, 484 (Wyo. 1976).

[¶19] The evidence at trial was that Triangle Cross offered services to clients who had issues with alcohol and drug abuse,[3] which are punishable as criminal offenses in Wyoming. Wyo. Stat. Ann. §§ 12-6-101(c) and 35-7-1031 (LexisNexis 2013). Further, Mr. Schneider testified that two of his students caused property damage, also a criminal offense in Wyoming. Wyo. Stat. Ann. § 6-3-201 (LexisNexis 2013). We find there was

---

[3] In addition to the website claim that alcohol and drug abuse were issues that would be helped at the ranch, Mr. Morso testified:

> I would say 90 percent of the time it's parents that are really catching their kid before, you know, they're really getting to be bad eggs. You know, maybe they caught someone with a bag of dope in their sock drawer, and they're like, better get this guy out of here.

6

sufficient evidence for the district court to conclude that Triangle Cross offered services to delinquent children.

[¶20] The district court relied on the statutory definition of "intellectual disability," which "means significantly subaverage general intellectual functioning with concurrent deficits in adaptive behavior manifested during the developmental period." Wyo. Stat. Ann. § 8-1-102(a)(xiii) (LexisNexis 2013). The district court based its conclusion that Triangle Cross was offering services to intellectually disabled children in part on its certification application. We do not agree that an application submitted to DFS is evidence of services that Triangle Cross offered to the public, rather than evidence of the services it intended to offer once it obtained certification. Instead, we look to the website or to the evidence of services that were actually offered to children at Triangle Cross. The district court noted that the website included ADD/ADHD as a condition that would be helped by ranch life. But the record contains no support for concluding that ADD/ADHD is an intellectual disability. Ms. Anderson testified that one of the student applications she reviewed indicated one of the young men "had some serious intellectual issues around education." The application she referred to is not in the record, and her description is insufficient to support a conclusion that the young man had "significantly subaverage general intellectual functioning with concurrent deficits in adaptive behavior manifested during the developmental period." Even assuming all evidence in favor of DFS is true, and affording it every favorable inference that may reasonably and fairly be drawn from it, we find insufficient evidence to support a conclusion that Triangle Cross offered services to children with an intellectual disability. Nevertheless, there was sufficient evidence for the district court to find that Triangle Cross was offering services to children who were delinquent, and therefore it was a facility which was required to obtain certification.

## *CONCLUSION*

[¶21] The district court correctly found that Triangle Cross Ranch was offering services to children who are delinquent and thus was required by Wyoming law to obtain certification. We affirm the order enjoining Triangle Cross Ranch, Gerald E. Schneider, and Michaeleen Schneider from continuing to operate without such certification.