# IN THE SUPREME COURT, STATE OF WYOMING

## 2019 WY 118

OCTOBER TERM, A.D. 2019

November 26, 2019

GREG HERRICK; RICHARD SUGDEN, M.D.;
CHRISTIAN ANDERSEN; BRENT BLUE, M.D.;
TETON AVJET, LLC and WYOMING JET
CENTER, LLC,

Appellants
(Petitioners/Counterclaim Defendants),

v.

JACKSON HOLE AIRPORT BOARD,

S-19-0073

Appellee
(Respondent/Counterclaimant)

and

JACKSON HOLE AVIATION,

Appellee
(Intervenor).

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Greg Herrick; Richard Sugden, M.D.; Christian Andersen; Brent Blue,*
*M.D.; Teton Avjet, LLC and Wyoming Jet Center, LLC:*
    Bruce T. Moats, Law Office of Bruce T. Moats, P.C., Cheyenne, Wyoming.
    Argument by Mr. Moats.

*Representing Jackson Hole Airport Board:*
    Paula A. Fleck, P.C., Holland & Hart LLP, Jackson, Wyoming. Argument by Ms.
    Fleck.

*Representing Jackson Hole Aviation:*
   Billie LM Addleman and Erin E. Berry, Hirst Applegate, LLP, Cheyenne, Wyoming. Argument by Mr. Addleman.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    The Appellants are Wyoming Jet Center, LLC and Teton Avjet, LLC (two entities interested in providing services at Jackson Hole Airport (Airport)), and Greg Herrick, Richard Sugden, Christian Andersen, and Brent Blue (individuals dissatisfied with the Airport's current services).  The Appellants filed a petition for declaratory judgment challenging the validity of an Asset Purchase Agreement (Purchase Agreement) between the Jackson Hole Airport Board (Board) and Jackson Hole Aviation, the current service provider at the Airport.  Appellants claimed the Purchase Agreement exceeded the Board's statutory authority because the Board could not acquire intangible assets[1] using revenue bond funding.  The district court granted summary judgment in favor of the Board, concluding the authorizing statutes permit the Board to use revenue bonds to acquire both tangible and intangible assets.  We affirm.

## ISSUES

[¶2]    We rephrase the issues:

1.  Did the district court abuse its discretion in denying Appellants' motions to compel production of documents prior to ruling on the motion for summary judgment?

2.  Do airport boards have the statutory authority to issue revenue bonds to fund the purchase of intangible property including goodwill?

## FACTS AND PROCEDURAL HISTORY

[¶3]    In 1968, the Town of Jackson (Town) and Teton County (County) jointly formed the Board to own and operate the Airport as authorized by Wyo. Stat. Ann. § 10-5-101. The Federal Aviation Administration requires a fixed-base operator (FBO) at every airport.  An FBO is usually a commercial entity that provides aeronautical services such as fueling, maintenance, storage, ground and flight instruction, and other like benefits to

---

[1] Wyo. Stat. Ann. § 39-11-101 states:

> "Intangible personal property" means personal property that lacks mass and cannot be seen, felt, weighed, measured or otherwise perceived by the senses; property that has no physical existence beyond merely representational.  Intangible property's value lies chiefly in what it represents, and its existence may be evidenced by a document[.]

Wyo. Stat. Ann. § 39-11-101(a)(vii) (LexisNexis 2019).

1

the public. The Board had a long-standing contract with Jackson Hole Aviation to provide FBO services to the Airport.

[¶4] The Federal Aviation Administration also requires every airport to employ more than one FBO where more than one FBO is available. The requirement does not apply, however, when a qualified airport takes on the role of FBO itself. In May 2017, Appellant Wyoming Jet Center applied to be a second FBO for private jet service at the Airport. After receiving this application, the Board issued a request for proposals in the event others were interested in providing FBO services.

[¶5] In July 2017, the Board withdrew the request for proposals in order to consider whether the Airport itself should assume the role of FBO. In November 2017, the Board decided the Airport would assume the role of FBO. It issued a resolution authorizing the acquisition of Jackson Hole Aviation's assets through a $26 million Purchase Agreement to be funded by revenue bonds. These bonds were to be repaid from the FBO profit.

[¶6] Appellants filed a petition for declaratory judgment on January 29, 2018, seeking declaration that Wyo. Stat. Ann. § 35-2-424(a) limits the use of revenue bonds to purchases of physical assets and that revenue bonds cannot be used to purchase "non-tangible assets." The Board counterclaimed seeking declaration that Wyo. Stat. Ann. § 10-5-101(a) governs the Board's authority to issue revenue bonds and that the Purchase Agreement complied with the statute. The Board then filed a motion for summary judgment.

[¶7] Appellants moved for an extension of time to complete discovery and filed a motion to compel production of the consultant reports to the Board containing the valuation of each specific asset included in the purchase. They claimed that, despite their requests for production, the Board had failed to provide the reports. Appellants argued these documents were necessary to determine if the $26 million was for the purchase of assets, or if instead the Board was buying a private business including its goodwill.[2] The Board objected to this discovery, claiming the information was not relevant to the question of whether the governing statutes authorized the use of revenue bonds to

---

[2] Black's Law Dictionary defines "goodwill" as:

> A business's reputation, patronage, and other intangible assets that are considered when appraising the business, esp. for purchase; the ability to earn income in excess of the income that would be expected from the business viewed as a mere collection of assets. • Because an established business's trademark or servicemark is a symbol of goodwill, trademark infringement is a form of theft of goodwill. By the same token, when a trademark is assigned, the goodwill that it carries is also assigned.

*Goodwill*, Black's Law Dictionary (11th Edition 2019). "[Goodwill] is only another name for reputation, credit, honesty, fair name, reliability." Harry D. Nims, *The Law of Unfair Competition and Trade-Marks* § 36 (1929).

purchase intangible assets. The Board also asserted the requested documents included financial information of a third party subject to a confidentiality and nondisclosure agreement.[3]

[¶8]   Appellants filed a second motion to compel production of two legal opinion letters authored by the Board's attorneys. These letters addressed: (1) whether the Board could use revenue bonds to purchase Jackson Hole Aviation's assets; and (2) whether the Board could act as its own FBO. Appellants argued the opinion letters were not subject to attorney-client privilege because the Board had shared them with the Town and County. The Board opposed the motion, asserting the Board, Town, and County had identical legal interests in the attorneys' opinions and, therefore, the letters continued to be privileged under the "common interest doctrine."[4]

[¶9]   The district court denied Appellants' motion to compel production of the consultant reports. It concluded the valuation information was not relevant to whether the statutes authorized the use of revenue bonds to purchase intangible assets, and Appellants' need for the information did not override its confidential and proprietary nature. The court also denied the motion to compel production of the legal opinion letters. It concluded the Board, Town and County had a common interest in whether the Airport could become the FBO and whether revenue bonds could be used to fund the Purchase Agreement. The attorney-client privilege was not waived. The district court further determined the opinion letters were not relevant to its legal interpretation of the statutory language.

[¶10]  After briefing, the district court issued an order granting summary judgment. The order held that Wyo. Stat. Ann. §§ 35-2-424 through -435 addressed only the manner in which the revenue bonds must be issued, and the use of revenue bonds was governed by

---

[3] The district court allowed Jackson Hole Aviation to intervene for the limited purpose of arguing that disclosing its "financial information, volume, margins, corporate structure, and economic forecast" to competitors would cause it immediate and future harm.

[4] The attorney-client privilege is limited to confidential communications. *Oil, Chem. & Atomic Workers Int'l Union v. Sinclair Oil Corp.*, 748 P.2d 283, 289 (Wyo. 1987). When these matters are made public or revealed to third persons, the element of confidentiality is wanting. *Id.* at 289–90 (citing 1 *McCormick on Evidence* § 91, at 217 (E. Cleary, 3rd ed. 1984)). An exception to this rule arises when clients share information on a matter of common interest:

> When two or more persons, each having an interest in some problem, or situation, jointly consult an attorney, their confidential communications with the attorney, though known to each other, will of course be privileged in a controversy of either or both of the clients with the outside world, that is, with parties claiming adversely to both or either of those within the original charmed circle.

*Id.* at 290 (quoting *McCormick, supra* at 219).

3

Wyo. Stat. Ann. § 10-5-101(a), which authorized purchases of both tangible and intangible property. Appellants filed a timely appeal.

## *DISCUSSION*

### I.   Did the district court abuse its discretion in denying Appellants' motions to compel production of documents prior to ruling on the motion for summary judgment?

### A.   Standard of Review

[¶11] This Court reviews discovery rulings under the abuse of discretion standard. *Washington v. State*, 2011 WY 132, ¶ 11, 261 P.3d 717, 721 (Wyo. 2011); *Ceja v. State*, 2009 WY 71, ¶ 11, 208 P.3d 66, 68 (Wyo. 2009); *Almada v. State*, 994 P.2d 299, 303 (Wyo. 1999); *Dodge v. State*, 562 P.2d 303, 307 (Wyo. 1977). "On review, our primary consideration is the reasonableness of the trial court's decision." *Nelson v. State*, 2009 WY 37, ¶ 12, 202 P.3d 1072, 1075 (Wyo. 2009) (citing *Proffit v. State*, 2008 WY 103, ¶ 12, 191 P.3d 974, 977 (Wyo. 2008)). The party challenging the district court's decision has the burden to prove an abuse of discretion. *Nelson*, ¶ 12, 202 P.3d at 1075; *Person v. State*, 2004 WY 149, ¶ 11, 100 P.3d 1270, 1275 (Wyo. 2004).

### B.   Analysis

[¶12] Appellants argue the district court's denial of their motion to compel production of reports, showing how specific assets were valued, denied them discovery relevant to whether the Board purchased Jackson Hole Aviation's goodwill. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." W.R.C.P. Rule 26(b)(1). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. Rule 401; *Cramer v. Powder River Coal, LLC*, 2009 WY 45, ¶ 23, 204 P.3d 974, 981 (Wyo. 2009); *Evenson v. State*, 2008 WY 24, ¶ 26, 177 P.3d 819, 827 (Wyo. 2008).

[¶13] Here, Appellants' Petition for Declaratory Judgment requested an order "[d]eclaring that the pending sale of revenue bonds by the Jackson Hole Airport Board exceeds the authority granted by statute" because "[t]he bond issue [would] fund the purchase of a great deal more than simply the physical assets of the FBO." They argued Wyo. Stat. Ann. § 35-2-424(a) "limits [the use of] the bonds to the purchase of physical assets" and does not authorize the purchase of the goodwill of a business.

[¶14] The district court ruled that the value of specific assets was not relevant to the issue raised in the Petition for Declaratory Judgment. The question Appellants presented

4

was whether the Board's purchase of intangible assets, including goodwill, was outside its statutory authority. The Board did not deny it was buying intangible assets. These assets were listed in the Purchase Agreement.[5] The value of any intangible asset was not germane to the issue. The question was whether intangible assets, including goodwill, could be purchased with revenue bonds, not at what cost. We agree with the district court's analysis. Appellants fail to show that the district court's decision was unreasonable in any way. *Nelson*, ¶ 12, 202 P.3d at 1075. The district court did not abuse its discretion in denying Appellants' motion to compel the reports and, therefore, we need not reach the arguments relating to Jackson Hole Aviation's confidential information.

[¶15] Similarly, the district court determined the legal opinion letters were not relevant. It held:

> [T]he information requested does not appear to be relevant to the question to be decided in the declaratory judgment action. Rather, the two letters as described are legal opinions and legal advice informing the respective agency decisions. Those agency decisions are not on appeal in this matter. To the extent the legal opinions expressed in those two letters are pertinent, they are not facts relevant to determining the question presented for a declaratory judgment. The question for a declaratory judgment is a question of law. Certainly, counsel for Petitioners shall have the opportunity to respond to the legal opinions and argument presented at summary judgment. Any preceding legal opinions are not before the [c]ourt, . . . [as] this is not an administrative appeal . . . .

[¶16] We agree with the district court. The first letter addresses the Board's right to operate as an FBO under the Federal Aviation Administration's rules. This question is not at issue here. The second letter discusses the statutory authority for the Board's purchase. The issue of the Board's statutory authority was for the court to determine as a matter of law. A private attorney's preliminary legal analysis is not a fact pertinent to the district court's statutory interpretation. *See Bd. of Prof'l Responsibility, Wyo. State Bar v. Stinson*, 2014 WY 134, ¶ 65, 337 P.3d 401, 419 (Wyo. 2014) ("The expert opinions . . . are not opinions that assist the trier of fact in understanding the evidence or determining a

---

[5] Many of the identified assets were items normally associated with an intrinsic goodwill value. In the list of assets to be transferred, the Purchase Agreement identified the transfer of "all transferable trademarks, copyrights and other intellectual property rights owned or licensed by the Seller including the trade name 'Jackson Hole Aviation' and variations thereof." *See Dawson v. Lohn*, 705 P.2d 853, 856–57 (Wyo. 1985) (citation omitted) ("a trade-name relates to a business and its good will rather than a vendible commodity").

fact in issue. They instead offer a legal conclusion, which is the province of . . . this Court."). The district court did not abuse its discretion in denying Appellants' motion to compel production of the legal opinion letters.

## II. Do airport boards have the statutory authority to issue revenue bonds to fund the purchase of intangible property including goodwill?

### A. Standard of Review

[¶17] "Statutory interpretation is a question of law that we review *de novo*." *Wyo. Jet Ctr., LLC v. Jackson Hole Airport Bd.*, 2019 WY 6, ¶ 11, 432 P.3d 910, 915 (Wyo. 2019). We afford no deference to the district court's determinations. *Alpine Lumber Co. v. Capital W. Nat'l Bank*, 2010 WY 62, ¶ 6, 231 P.3d 869, 871 (Wyo. 2010).

[¶18] A district court's grant of summary judgment is reviewed as follows:

> We review a district court's order granting summary judgment *de novo* and afford no deference to the district court's ruling. This Court reviews the same materials and uses the same legal standard as the district court. The record is assessed from the vantage point most favorable to the party opposing the motion . . . , and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.

*Wyo. Jet Ctr.*, ¶ 10, 432 P.3d at 914–15 (citations omitted).

### B. Analysis

[¶19] Appellants argue the controlling statutes limit the Board's use of revenue bonds to the purchase of physical assets. "State agencies can exercise only those powers authorized by statute." *Horse Creek Conservation Dist. v. State ex rel. Wyo. Attorney Gen.*, 2009 WY 143, ¶ 30, 221 P.3d 306, 316 (Wyo. 2009) (citations omitted). "A corollary of the rule is that, when a statute provides a particular manner in which a power may be executed, the agency may not exercise its power in a different way. Any action taken by an agency without authority is ultra vires and void." *Solvay Chems., Inc. v. Dep't of Revenue*, 2018 WY 124, ¶ 13, 430 P.3d 295, 299 (Wyo. 2018) (citations omitted).

6

[¶20] When determining the meaning of a statute, we apply our well-known rules of statutory construction:

> [O]ur goal is to give effect to the intent of the legislature, and we "attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute." Where legislative intent is discernible a court should give effect to the "most likely, most reasonable, interpretation of the statute, given its design and purpose."

> We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.

*Wyo. Jet Ctr.*, ¶ 12, 432 P.3d at 915 (citations omitted).

[¶21] The Board's authority to issue revenue bonds is found in Wyo. Stat. Ann. § 10-5-202:

> (a) The authority and powers granted in W.S. 10-5-101 through 10-5-204 and the control of funds named may be under the control of an airport board. Upon majority vote of board members the board **may issue revenue bonds**, notes, warrants and other revenue securities **in the same manner provided by W.S. 35-2-424 through 35-2-435** for trustees of hospital districts for the purposes of W.S. 10-5-101 through 10-5-204.

Wyo. Stat. Ann. § 10-5-202(a) (LexisNexis 2019) (emphasis added). Wyo. Stat. Ann. § 35-2-424 states:

(a) The trustees of a hospital district established pursuant to W.S. 35-2-401, are hereby authorized to issue revenue bonds, notes and warrants or other revenue securities, hereinafter referred to as securities, **for the purpose of acquiring, erecting, constructing, reconstructing, improving, remodeling, furnishing and equipping hospitals and related facilities, and acquiring a site or sites therefor,** from time to time hereafter as the trustees may determine.

Wyo. Stat. Ann. § 35-2-424(a) (LexisNexis 2019) (emphasis added).

[¶22]   Appellants argued that Wyo. Stat. Ann. § 10-5-202's reference to Wyo. Stat. Ann. § 35-2-424 demonstrates the legislature's intent to limit the Board's use of revenue bonds to the purposes listed in Wyo. Stat. Ann. § 35-2-424.  They claim this reference means the legislature intended to replace the term "hospitals" with the word "airports," when the statute is used by airport boards.  This would mean that airport board revenue bonds could be used only for "acquiring, erecting, constructing, reconstructing, improving, remodeling, furnishing and equipping [airports] and related facilities, and acquiring a site or sites therefor."

[¶23]   The district court rejected Appellants' statutory interpretation.  It found the plain language of Wyo. Stat. Ann. § 10-5-202 providing that airport boards "may issue revenue bonds . . . **in the same manner** provided by W.S. 35-2-424 through 35-2-435" reveals the intent to set forth the method for issuing airport revenue bonds and does not restrict what may be purchased.  The district court went on to conclude Wyo. Stat. Ann. § 10-5-101 controls what may be purchased by an airport board.

[¶24]   We agree with the district court's interpretation of these statutes.  The reference to a series of statutes addressing the procedures for issuing revenue bonds makes clear the legislature's intent to have airport boards follow these procedures.  The controlling statute as to *what* may be purchased is Wyo. Stat. Ann. § 10-5-101:

(a) Municipal corporations and counties within the state are authorized at the discretion of their governing boards, acting either singly or jointly to:
(i) Acquire, by lease, purchase, or otherwise, **lands and other property for airport purposes**, **and to construct, maintain and operate these facilities for the landing, housing, care and departure of airborne craft**; . . . .

Wyo. Stat. Ann. § 10-5-101(a)(i) (LexisNexis 2019) (emphasis added).

8

[¶25] Appellants argue Wyo. Stat. Ann. § 10-5-101(a)(i) is ambiguous for two reasons. First, they assert the word "facility" is defined in Merriam-Webster's online dictionary as "something (such as a hospital) that is built, installed, or established to serve a particular purpose." Applying that definition and arguing the term "these facilities" in Wyo. Stat. Ann. § 10-5-101 relates back to "other property," they assert this language limits "other property" to tangible facilities. It is their view that this interpretation is supported when the statute is read *in pari materia* with Wyo. Stat. Ann. §§ 10-5-202(a) and 35-2-424.

[¶26] The district court found no ambiguity in Wyo. Stat. Ann. § 10-5-101, concluding the term "facilities" is not limited to physical assets when read in conjunction with the phrase "lands and **other property for airport purposes**." It noted the term "other property" is broad. *Fid. & Deposit Co. of Md. v. Arenz*, 290 U.S. 66, 68, 54 S. Ct. 16, 17, 78 L. Ed. 176 (1933) ("'Property' is a word of very broad meaning, and, when used without qualification, expressly made or plainly implied, it reasonably may be construed to include obligations, rights, and other intangibles as well as physical things."); *Total Petroleum P.R. Corp. v. Valle Figueroa*, 410 B.R. 127, 128 (D.P.R. 2009) (citation omitted) ("'Property' has a broad meaning that encompasses 'everything of value the bankrupt may possess in alienable or leviable form when he files his petition.'"); *State v. Gulf Oil Corp.*, 256 So. 2d 179, 181 (Ala. 1971) ("The word 'property' has a broad meaning and when used without qualification may be reasonably construed to include obligations, rights, and other intangibles as well as physical things."). The legislature did not limit the term "other property" in the statute. The district court reasoned, if the legislature intended to limit the types of property the Board may acquire in the way suggested by Appellants, it could have easily added the word "tangible." The legislature chose not to do so.

[¶27] The district court also rejected Appellants' interpretation of the word "facilities." It reasoned "facilities" for "airport purposes" would include physical assets, but would also "necessarily include certain intangible assets such as software, computer licenses, vendor lists, warranties, existing leases, etc." The district court concluded that "it [would] be impractical to read the revenue bond statute to limit airport boards to [the purchase of] only physical assets." We agree with the district court's analysis.

[¶28] "We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law when it enacts a statute." *DiFelici v. City of Lander*, 2013 WY 141, ¶ 31, 312 P.3d 816, 824 (Wyo. 2013). "[A] court cannot, under the guise of its powers of construction, rewrite a statute, supply omissions, or make other changes[.]" *Triangle Cross Ranch, Inc. v. State, Wyo. Dep't of Family Servs.*, 2015 WY 47, ¶ 18, 345 P.3d 890, 894 (Wyo. 2015) (quoting *In re Adoption of Voss*, 550 P.2d 481, 484 (Wyo. 1976)).

9

[¶29] Wyo. Stat. Ann. § 10-5-101 is not ambiguous.[6]   The legislature knew the difference between tangible and intangible property but included no limitation when authorizing the Board to purchase "lands and other property" for airport purposes.  *See* Wyo. Stat. Ann. § 39-11-101(a) (defining tangible and intangible property).  To read the statutes as Appellants suggest would require us to rewrite the statutory language to insert "*tangible*" into Wyo. Stat. Ann. § 10-5-101 and insert "*airport*" into Wyo. Stat. Ann. § 35-2-424.  "This Court is not at liberty to add words to a statute that the legislature chose to omit."  *Int'l Ass'n of Fire Fighters Local Union No. 5058 v. Gillette/Wright/ Campbell Cty. Fire Prot. Joint Powers Bd.*, 2018 WY 75, ¶ 33, 421 P.3d 1059, 1067 (Wyo. 2018) (citation omitted).

[¶30]  The district court's decision gave effect to the most likely and most reasonable interpretation of the statute, given its design and purpose.  We agree that Wyo. Stat. Ann. § 10-5-101 authorizes an airport board to purchase both tangible and intangible property using revenue bonds.

[¶31]  As a final proposition, Appellants argue that even if the statute allows the purchase of intangible property, "the general principle [is] that goodwill is not property."  Appellants cite no authority for this principal, but do refer to the property tax statute, Wyo. Stat. Ann. § 39-11-105(b).  That statute provides, in part:

> (b) The following shall be exempt from property taxation:
> (i) **Goodwill** if established and separately identified on a company's books and records, or affirmed by generally accepted accounting, or appraisal, principles;
> (ii) Any of the following intangible items:
>     [Listing items A–E].
> (iii) **Any license, permit or other right** granted by a person, or by a governmental unit or an agency or instrumentality thereof;
> (iv) **Any covenant not to compete**, or other arrangement to the extent such arrangement has

---

[6] Appellants argue the term "other property" relates back to and is limited by the term "land" under the doctrines of *ejusdem generis* and *noscitur a sociis*.  Neither doctrine applies here.  "The statutory construction rule of *ejusdem generis* instructs us that the legislature must have intended a catch-all phrase to include things similar to those specifically listed."  *Sponsel v. Park Cty.*, 2006 WY 6, ¶ 16, 126 P.3d 105, 109 (Wyo. 2006).  Here, there is no list.  "[T]he doctrine of *noscitur a sociis* counsels that general and specific words are associated with and take color from each other, restricting general words to a sense analogous to the less general."  *Gordon v. State by & through Capitol Bldg. Rehab.*, 2018 WY 32, ¶ 48, 413 P.3d 1093, 1107 (Wyo. 2018) (citations and quotation marks omitted).  "The doctrine is applied only to discover the meaning of ambiguous terms."  *Id.*  We have concluded that Wyo. Stat. Ann. § 10-5-101 is not ambiguous.  Therefore, we will not apply the doctrine of *noscitur a sociis*.

10

substantially the same effect as a covenant not to compete, entered into in connection with an acquisition directly or indirectly of an interest in a trade or business or substantial portion thereof;
(v) **Any franchise, trademark or trade name**;
(vi) Any of the **following intangible items**:
[Listing items A–G].

Wyo. Stat. Ann. § 39-11-105(b) (LexisNexis 2019) (emphasis added).

[¶32] Appellants argue this statute distinguishes "goodwill" from intangible property because, otherwise, there would be no need to list it separately from the list of items designated as intangible property. Appellants' argument is unpersuasive. "Goodwill" is not the only intangible item separated from the "lists" of intangible property. The statute also separates any "license," "permit," "covenant not to compete," "franchise," and "trademark or trade name." All of these terms have been recognized as intangible property. *Airtouch Commc'ns, Inc. v. Dep't of Revenue, State of Wyo.*, 2003 WY 114, ¶ 46, 76 P.3d 342, 359 (Wyo. 2003) (governmental licenses, franchises, and customer lists); *Neuman v. Neuman*, 842 P.2d 575, 581 (Wyo. 1992) (business goodwill for marital property valuation); *Ritter v. Farrow*, 933 N.W.2d 167, 174–75 (WI App. 2019) (trademark); *Matter of Protest of Strayer*, 716 P.2d 588, 593 (Kan. 1986) (goodwill, franchises, patents, copyrights, and trademarks).

[¶33] Moreover, goodwill has been recognized as property for over a century. *See, e.g.*, *Metro. Nat'l Bank v. St. Louis Dispatch Co.*, 36 F. 722, 724 (C.C.E.D. Mo. 1888), *aff'd*, 149 U.S. 436, 13 S. Ct. 944, 37 L. Ed. 799 (1893) (Goodwill "is intangible property which, in the nature of things, can have no existence apart from a business of some sort that has been established and carried on at a particular place."); *In re C.R. Stone Concrete Contractors, Inc.*, 462 B.R. 6, 22 (Bankr. D. Mass. 2011) ("good will is property, and is a valuable asset in [an individual's] business") (citing *George G. Fox Co. v. Glynn*, 78 N.E. 89, 91 (Mass. 1906)); *Martin v. Battistella*, 9 So. 3d 1235, 1238 (Ala. 2008) ("Goodwill is property of an intangible nature."). The district court correctly determined goodwill is intangible property included in the term "other property" found in Wyo. Stat. Ann. § 10-5-101(a).

## CONCLUSION

[¶34] The district court did not abuse its discretion when it denied Appellants' motions to compel production of documents. The district court correctly interpreted Wyo. Stat. Ann. § 10-5-101(a) when it held the term "other property" authorized the use of revenue bonds for purchases of both tangible and intangible property. Affirmed.