# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 96

**APRIL TERM, A.D. 2022**

**August 16, 2022**

GERALD L. SPENCE; JOHN ZELBST;
REX PARRIS; JOSEPH H. LOW and
KENT SPENCE, directly on their own
behalf and derivatively on behalf of The
Trial Lawyers College, a Wyoming
nonprofit corporation,

Appellants
(Plaintiffs),

v.

JOHN SLOAN; MILTON GRIMES;
MAREN CHALOUPKA; J.R. CLARY,
JR.; DANA COLE and ANNE
VALENTINE,

Appellees
(Defendants),

and

THE TRIAL LAWYERS COLLEGE, a
Wyoming nonprofit corporation,

Appellee
(Nominal Defendant).

S-21-0243

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellants:*

    *J. Kenneth Barbe, II and Hampton K. O'Neill, Welborn Sullivan Meck & Tooley, P.C., Casper, Wyoming; James E. Fitzgerald, The Fitzgerald Law Firm, Cheyenne, Wyoming. Argument by Mr. Barbe, II and Mr. Fitzgerald.*

*Representing Appellees:*

    *Patrick J. Murphy and Zara S. Mason, Williams, Porter, Day & Neville, P.C., Casper, Wyoming. Argument by Mr. Murphy.*

***Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.***

***FOX, C.J., delivers the opinion of the Court; KAUTZ, J., files a specially concurring opinion.***

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    This appeal arises out of a dispute between two factions of the former Board of Directors of the Wyoming Trial Lawyers College; the Spence Group and the Sloan Group. The Spence Group filed a derivative action against both the College and the Sloan Group seeking removal of the Sloan Group from the College's Board and a declaration that the Spence Group constituted the duly acting Board. The district court found the Spence Group lacked standing to bring the derivative action and granted the Sloan Group's motion for summary judgment. We affirm.

## ISSUES

[¶2]    The issues are:

1. Was the summary judgment order in favor of the Sloan Group an appealable order?

2. Did the district court correctly conclude that the Spence Group lacked standing to bring a derivative action?

3. Did the district court abuse its discretion in ruling that the Spence Group could not bring its derivative action in equity?

## FACTS

[¶3]    In 1993, Gerald L. "Gerry" Spence established the Trial Lawyers College as a nonprofit corporation pursuant to the Wyoming Nonprofit Corporation Act. The College's bylaws express its mission as follows:

> The Trial Lawyer's [sic] College is dedicated to training and educating lawyers and judges who are committed to the jury system and to representing and obtaining justice for individuals; the poor, the injured, the forgotten, the voiceless, the defenseless and the dammed [sic], and to protecting the rights of such people from corporate and government oppression.
>
> In all of its activities, the Trial Lawyer's [sic] College will foster and nourish an open atmosphere of caring for people regardless of their race, age, creed, religion, nation [sic] origin, physical abilities, gender or sexual orientation. We do not offer

1

training for those lawyers who represent government, corporations or large business interests.

[¶4] At some point, tensions developed between members of the College's Board of Directors. The parties disagree whether those tensions stemmed from concerns with alleged deviations from the College's mission by some directors, or the refusal of some directors to approve the use of College savings to build an education center in Gerry Spence's honor. Whatever their genesis, those tensions came to a head in April 2020.

[¶5] On April 13, 2020, the board held a meeting attended by the following directors: John Sloan; Gerry Spence; Joseph Low; Dana Cole; Rex Parris; Anne Valentine; John Zelbst; J.R. Clary, Jr.; Mel Orchard; Milton Grimes; and Maren Chaloupka. During that meeting, Gerry Spence, without offering a reason for the request, asked that Dana Cole and Mel Orchard resign from the board. He informed them that if they refused to resign, the Spence Foundation would terminate the College's lease of the Thunderhead Ranch, where it held courses, and the College would be prohibited from using his name or likeness or the Thunderhead Ranch brand. Mr. Orchard declined the request to resign during the meeting. As to Mr. Cole, Mr. Spence said to him, "I'm going to ask you, [Dana] one more time. Are you going to resign or not." Mr. Cole responded, "I am."

[¶6] That same day, Mr. Spence's attorney provided Board president John Sloan notice of the Spence Foundation's termination of the Thunderhead Ranch lease. The notice allowed the College thirty days to vacate the premises and ordered it to cease and desist use of Mr. Spence's name or likeness, and the Thunderhead Ranch name or brand.

[¶7] On April 26, 2020, Mel Orchard emailed his written resignation to Mr. Sloan, effective immediately. Two days later, on April 28, Gerry Spence, John Zelbst, Rex Parris, Joseph Low, and Kent Spence, in their capacity as Board members, filed a complaint against the College seeking its dissolution and distribution of its assets to another nonprofit corporation to carry out its purpose. Alternatively, the complaint asked "that the court exercise its equitable powers to remove all directors other than plaintiffs and allow plaintiffs, therefore, to carry on the mission of the organization." Also on April 28, Mr. Spence's attorney filed with the Secretary of State articles of incorporation for a nonprofit corporation called "Gerry Spences [sic] Trial Lawyers College at the Thunderhead Ranch."

[¶8] Also that day, Mr. Sloan emailed Mr. Cole and advised him that resignations must be in writing to be effective. He also informed Mr. Cole that he was preparing to send out a meeting notice and did not wish to include Mr. Cole unnecessarily. Mr. Cole responded:

> In our board meeting on April 13, 2020, Gerry Spence asked for my resignation from the Board of Directors of the Trial Lawyers College. I was preparing to do so in writing as required by Wyoming law. However, it has come to my

2

attention that a lawsuit has been filed seeking to dissolve the Trial Lawyers College. While I was reluctantly willing to walk away from the organization I have served for 25 years, I am unwilling to see it destroyed. Therefore, a written notice of resignation will not be forthcoming. I will remain in my position as a member of the Board of Directors of the Trial Lawyers College and will continue to fulfill my fiduciary duties.

[¶9]    Mr. Sloan sent written notice of a special meeting to be held on May 6, 2020. The notice went to John Sloan, Milton Grimes, J.R. Clary, Jr., Dana Cole, Anne Valentine, Maren Chaloupka, Kent Spence, Rex Parris, Gerry Spence, Joseph Low, and John Zelbst. The notice indicated that the meeting's purpose was to discuss and vote upon the following agenda items:

1.    Amend Article IV(B)(1) of the existing Bylaws of the Trial Lawyers College -- which currently says, "The number of Directors shall not be less than seven (7) and not more than fourteen (14)" -- to reduce the number of Directors to now provide, "The number of Directors shall not be less than five (5) and not more than eleven (11)."

2.    Election of Directors.

3.    Election of all Officers.

[¶10]   Each of the notified directors attended the May 6 meeting.[1] They were aligned then and remain aligned as follows:

| Sloan Group | Spence Group |
|---|---|
| 1. John Sloan, President | 1. Gerry Spence |
| 2. Milton Grimes, Vice President | 2. Joseph Low |
| 3. Dana Cole, Secretary | 3. John Zelbst |
| 4. JR Clary, Jr., Treasurer | 4. R. Rex Parris |
| 5. Maren Chaloupka | 5. Kent Spence |
| 6. Anne Valentine | |

[¶11]   During the meeting, Mr. Clary moved to amend the bylaws to reduce the minimum and maximum number of directors as detailed in the meeting agenda, and Mr. Grimes

---

[1] Gerry Spence's wife, Imaging Spence, attended the meeting as well, purportedly as a director. The parties have since agreed that Ms. Spence was no longer a director at the time of the May 6 meeting.

3

seconded the motion. The motion passed by a vote of six to four, with the Sloan Group voting in its favor and the Spence Group against it.[2] The Board then moved to the second agenda item, the election of officers. Ms. Chaloupka nominated each member of the Sloan Group to the Board, including herself, and Ms. Valentine seconded the nomination. The Sloan Group voted in favor of the nominated slate with six votes, and the Spence Group voted against it with four, so the Sloan Group was reelected to the Board. Mr. Zelbst then nominated each member of the Spence Group to the Board, including himself, and Mr. Parris seconded the motion. The Spence Group voted in favor of the nominated slate with four votes, and the Sloan Group voted against it with six. The Spence Group was therefore not reelected to the Board.

[¶12]  Mr. Sloan excused the Spence Group from the meeting and proceeded to the election of officers. Ms. Valentine nominated Mr. Sloan for president, Mr. Grimes for vice president, Mr. Clary for treasurer, and Mr. Cole for secretary, and Ms. Chaloupka seconded the nominations. The nominations passed with a unanimous vote. The meeting then adjourned with no other action taken.[3]

[¶13]  On June 22, 2020, the Spence Group filed a derivative action against the Sloan Group and the College. The complaint alleged that Dana Cole was not a director because of his April 13, 2020, resignation, and Maren Chaloupka was not a director because her election five years earlier had not been held in compliance with statutory and bylaw requirements. It further alleged that some or all the Sloan Group directors should be removed from the Board because they represented big business, insurance companies, corporations, or the government, and/or had engaged in dishonest conduct or a gross abuse of authority or discretion. It sought a declaration that Dana Cole and Maren Chaloupka were not directors; and removal of any Sloan Group director found to have engaged in fraudulent or dishonest conduct, or a gross abuse of authority or discretion, or activities contrary to the College's mission statement. It also sought a declaration that the Spence Group members are the duly acting directors.

[¶14]  The parties stipulated to consolidation of the dissolution and derivative actions for purposes of discovery. Their stipulated motion noted that the parties "take no position, at this time, as to whether or not these two cases should also be consolidated for trial[.]" The district court consolidated the cases for purposes of discovery, stating it "defers making any ruling or pronouncement on whether these cases should also be consolidated for purposes of trial."

---

[2] Mr. Sloan took the position that Kent Spence had been suspended from the Board and thus refused to recognize his vote on any agenda item, which we will address later in the opinion as needed.
[3] After the Spence Group was excused from the Board meeting, it reconvened and reelected itself to what it claimed as the College's board. At a subsequent meeting, the Spence Group elected an additional five directors to its claimed board.

4

[¶15]   The parties filed cross-motions for summary judgment in both actions. The district court entered a combined order consolidating the two actions, denying the Spence Group's motion for summary judgment, and granting in part the Sloan Group's motion for summary judgment. As to consolidation, the court stated, "[T]he Court having agreed with the parties that the August 13, 2020 *Order Consolidating Cases for Purposes of Discovery* was proper while reserving the question of further consolidation now finds common questions of law and fact in the two matters mandate the consolidation of the above captioned cases pursuant to W.R.C.P. 42 (a)." In so ruling, the court fully consolidated the two actions.[4]

[¶16]   As to the summary judgment motions, the district court ruled that disputed issues of fact precluded either party's motion on the Spence Group's claims that members of the Sloan Group engaged in fraudulent or dishonest conduct or abused their authority or discretion, and on its claim that removal of the Sloan Group directors would be in the best interest of the College. The court, however, granted the Sloan Group's motion for summary judgment on the Spence Group's claim that the Board was deadlocked. In so ruling, the court found: Dana Cole's April 2020 resignation was not effective because it was not in writing; the doctrine of laches precluded the Spence Group's challenge to Maren Chaloupka's directorship; and the Sloan Group constituted the duly elected Board. The court then ordered that "as this ruling raises the additional issue of standing as to some of the relief requested, the parties have leave to file any additional motions on that issue."

[¶17]   The Sloan Group filed a W.R.C.P. 12(b)(6) motion to dismiss and/or motion for summary judgment in the derivative action, contending the Spence Group lacked standing to bring it. It argued that a derivative complaint may only be filed by a member or director of a corporation, and per the district court's summary judgment order, no member of the Spence Group remained a director after the May 6, 2020, Board meeting. The Spence Group countered that its members remained as "holdover" directors after the May 6 meeting, and they thus had standing to bring the derivative complaint. Alternatively, they argued they should be permitted to pursue the derivative action in equity.

[¶18]   The district court dismissed the Spence Group's derivative complaint for lack of standing. It rejected the Spence Group's claim to status as holdover directors, concluding that the May 6, 2020, amendment to the College's bylaws, which decreased the number of directors, ended the holdover status of all the directors.

---

[4] Although it does not appear that either party moved for full consolidation, as Rule 42 generally requires, neither party objected to the district court's consolidation of the cases. *See Bard Ranch, Inc. v. Weber*, 538 P.2d 24, 40 (Wyo. 1975) ("In the light of the judicial development of interpretations relating to this particular rule of civil procedure, it would be necessary in order to effect the merger of cases into one action that a formal motion be filed requesting that result, and a specific order effectuating such a merger be entered."); *see also Skaf v. Wyo. Cardiopulmonary Servs., P.C.*, 2018 WY 126, 430 P.3d 294 (Wyo. 2018) ("Upon motion, the district court consolidated the two actions, 'creating a single action.'"); *Bozner v. Jim's Water Serv., Inc.*, 2018 WY 125, 430 P.3d 293 (Wyo. 2018) ("While Appellant and Mr. Hoy filed separate complaints, upon motion the cases were consolidated into Appellant's docket, Civil No. C-16-231-L.").

> The Court finds the vote to decrease the required number of directors as being the event which allowed the TLC Board members to hold an election of new directors. This vote did not remove all or any of the directors, while it did provide the need for an election of all directors, as every director's term had expired. At the May 6, 2020 [meeting], both parties voted to elect new directors and officers to the Board. The Spence Group attended the meeting, nominated themselves to the Board and lost the election. This left the Sloan Group as the valid directors to the TLC Board.

[¶19]   Because no member of the Spence Group remained as a director on the Board, the district court concluded the Spence Group lacked standing to bring the derivative action.

> Looking to the plain meaning of Wyo. Stat. Ann. § 17-19-630(b), it is clear the Wyoming legislature drafted this statute with the intent that only directors or members are suitable complainants to a derivative action. This Court held in its *Order*, the actions of the Sloan Group in changing the TLC bylaws and electing new directors and officers to the TLC Board of Directors to be legally proper. *Order* at 30. On May 6, 2021 [sic], the Sloan Group was elected to the Board of Directors, while the Spence Group was nominated but failed to be reinstated as directors. As a result, not one member of the Spence Group was on the TLC Board of Directors when they filed their *Derivative Action* on June 22, 2020. As the Spence Group was not on the board at the time of filing their *Derivative Action*, they lacked the requisite standing to bring such [sic] this lawsuit.

[¶20]   The district court also rejected the Spence Group's alternative argument that it be permitted to pursue its derivative action in equity. The court found the Spence Group had not made the required showing that it had no relief at law. It further found that the members of the Spence Group were not deprived of their positions on the Board by wrongful acts of the Sloan Group but rather by a lawfully held election at a lawfully called meeting.

[¶21]   The Spence Group appealed the dismissal of its derivative complaint to this Court. Its dissolution action remains pending in district court and is set for a bench trial on March 20, 2023.

*STANDARD OF REVIEW*

[¶22]  The district court dismissed the derivative action pursuant to Rule 12(b)(6), but it relied on its earlier summary judgment ruling, which relied on materials outside the pleadings. We will therefore review the dismissal as a summary judgment ruling.[5] "We review a district court's ruling on summary judgment de novo and may affirm on any legal ground appearing in the record." *Miller v. Sweetwater Cnty. Sch. Dist. # 1*, 2021 WY 134, ¶ 13, 500 P.3d 242, 246 (Wyo. 2021) (citing *James v. James*, 2021 WY 96, ¶ 23, 493 P.3d 1258, 1264 (Wyo. 2021)).

> We ... afford no deference to the district court's ruling. *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016). This Court reviews the same materials and uses the same legal standard as the district court. *Id.* The record is assessed from the vantage point most favorable to the party opposing the motion ..., and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id.*

*Id.*

[¶23]  Concerning the parties' burdens on summary judgment, we have said:

> The party moving for summary judgment bears the burden of establishing a prima facie case and showing there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Once that burden is met, the opposing party is obligated to respond with materials beyond the pleadings to show a genuine issue of material fact. When the moving party does not have the ultimate burden of persuasion, it establishes a prima facie case for summary judgment by showing a lack of evidence on an essential element of the opposing party's claim.

*Miller*, 2021 WY 134, ¶ 14, 500 P.3d at 246 (cleaned up).

---

[5] To the extent that any aspect of our review requires a different standard of review, we will set that out in our discussion.

## DISCUSSION

### *I. The district court's dismissal of the Spence Group's derivative action was not a final appealable order absent a W.R.C.P. 54(b) certification, but this Court will exercise its authority to convert the appeal to a writ of review.*

[¶24] Although the parties have not raised the question of whether dismissal of the derivative action was a final appealable order, we may do so sua sponte because it implicates our jurisdiction over the appeal. *Davidson-Eaton v. Iversen*, 2021 WY 49, ¶ 9, 484 P.3d 23, 24 (Wyo. 2021) (citing *Edsall v. Moore*, 2016 WY 71, ¶ 10, 375 P.3d 799, 801 (Wyo. 2016)). Whether we have jurisdiction is a question of law we consider de novo. *Jontra Holdings Pty Ltd v. Gas Sensing Tech. Corp.*, 2021 WY 17, ¶ 28, 479 P.3d 1222, 1231 (Wyo. 2021).

[¶25] Appealability is an issue because the district court consolidated the dissolution and derivative actions. Only part of the consolidated matter has been resolved, and therefore the question arises whether the order dismissing the derivative action is a final order. *See Matter of Est. of Rowe*, 2021 WY 87, ¶ 7, 492 P.3d 888, 891 (Wyo. 2021) ("The Supreme Court's jurisdiction is generally limited to appeals from final orders."); W.R.A.P. 1.05(a). Courts generally take one of three approaches to this question.

> In determining the appealability of an interim judgment in consolidated cases, other jurisdictions have developed three different approaches. Several jurisdictions are of the view that consolidated cases remain separate actions so that a judgment entirely resolving one action will be appealable without a Rule 54(b) certification. Others apply a case-by-case approach in determining whether a Rule 54(b) certification is a prerequisite to an appeal. In those courts, the decision turns upon such factors as the extent and purpose of the consolidation, the relationship of the consolidated actions, the severability of the issues appealed, whether the cases could have been filed as a single action in the first place, and the potential harm to the appellant's interests if the appeal is delayed. A third group of jurisdictions permit appeal from a judgment disposing of less than all of the consolidated claims only if a Rule 54(b) certification has been entered by the trial court.

*Matter of Doe*, 911 P.2d 140, 143 (Idaho 1996) (citations omitted); *see also Leslie v. Est. of Tavares*, 122 P.3d 803, 807-08 (Haw. 2005); *Spraytex, Inc. v. DJS&T*, 96 F.3d 1377, 1379-80 (Fed. Cir. 1996); *Mission Viejo Co. v. Willows Water Dist.*, 818 P.2d 254, 259-60 (Colo. 1991); *Trinity Broad. Corp. v. Eller*, 827 F.2d 673, 675 (10th Cir. 1987); Jacqueline

8

Gerson, Comment, *The Appealability of Partial Judgments in Consolidated Cases*, 57 U. Chi. L. Rev. 169, 170-71 (1990).

[¶26] The first approach, which treats consolidated cases as separate and allows immediate appeal of any final order, and the second approach, which considers the nature of the consolidation to determine appealability, have been criticized as creating uncertainty for litigants and encouraging piecemeal review. *Leslie*, 122 P.3d at 809; *Spraytex*, 96 F.3d at 1382; *Trinity*, 827 F.2d at 675.

> In our opinion, it is essential that the point at which a judgment is final be crystal clear because appellate rights depend upon it. The opportunity to appeal could be lost by a mistaken belief that the judgment is not final and a consequent failure to file timely a notice of appeal. On the other hand, uncertainty as to the finality of the judgment could lead to the premature filing of a notice of appeal with the consequent waste of time and resources. . . .

*Leslie*, 122 P.3d at 809 (quoting *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984), *reversed on rehearing*, 753 F.2d 1081 (9th Cir. 1984)).

[¶27]  In an early case, our Court adopted the third approach, which permits appeal from a judgment disposing of less than all the consolidated claims only with a Rule 54(b) certification.

> It is generally recognized that the provisions of Rule 54, W.R.C.P., are of importance in an interpretation of Rule 42. 2B Barron and Holtzoff, Federal Practice and Procedure, p. 186 (1961). Although the word 'consolidation' is used in different senses, 2B Barron and Holtzoff, Federal Practice and Procedure, p. 172 (1961), 1 C.J.S. Actions § 107, the type apparently employed here does not merge the suits into a single action so far as ultimate relief is concerned, but it must for the purposes of effective administration of justice consolidate them to such an extent that they may be handled as one upon the appeal where such effect has been given in the trial court. To that extent, cases such as the ones before us are within the purview of Rule 54(b), which permits the entry of a final and appealable judgment upon the express determination by the trial court that there is no just reason for delay. If this were not so, an appellate court might be called upon to review piecemeal numerous cases which were in the principal aspects identical and during such period the various parties interested in the

9

> litigation would be subject to much confusion in attempting to comply with the requisite steps in appeal. . . .

*State ex rel. Pac. Intermountain Express, Inc. v. Dist. Ct. of the Second Jud. Dist., Sweetwater Cnty.*, 387 P.2d 550, 552 (Wyo. 1963); *see also CSC Grp. Holdings, LLC v. Automation & Elecs., Inc.*, 2016 WY 26, ¶ 27, 368 P.3d 302, 308 (Wyo. 2016) ("[Rule 54] applies to consolidated cases.").

[¶28]   In recent orders, we have deviated from the requirement of a Rule 54(b) certification in the appeal of consolidated claims and have looked to the extent of the consolidation to determine appealability. *See Skaf*, 2018 WY 126, 430 P.3d at 294-95; *Bozner*, 2018 WY 125, 430 P.3d at 293-94. Because we consider that clarity best serves the litigants and the courts, we take this opportunity to reaffirm our rule that an appeal may be taken from a judgment disposing of less than all consolidated claims only with a Rule 54(b) certification.[6]

[¶29]   The Spence Group did not obtain a Rule 54(b) certification. Thus, if we are to retain jurisdiction, we must convert its appeal to a writ of review.

> A writ of review may be granted by the reviewing court to review an interlocutory order of a trial court in a civil or criminal action, . . . which is not otherwise appealable under these rules, but which involves a controlling question of law as to which there are substantial bases for difference of opinion and in which an immediate appeal from the order may materially advance resolution of the litigation.

W.R.A.P. 13.02.

[¶30] Rule 13.02 review is discretionary, and we grant it only under limited circumstances. *Tram Tower Townhouse Ass'n v. Weiner*, 2022 WY 58, ¶ 40, 509 P.3d 357, 366 (Wyo. 2022) (quoting *CIBC Nat'l Tr. Co. v. Dominick*, 2020 WY 56, ¶ 19, 462 P.3d 452, 460 (Wyo. 2020)). We will do so only "when the case raises a question of law and

---

[6] The United States Supreme Court recently held that when cases are consolidated under Rule 42, "constituent cases retain their separate identities at least to the extent that a final decision in one is immediately appealable by the losing party." *Hall v. Hall*, ___ U.S. ___, 138 S.Ct. 1118, 1122, 200 L.Ed.2d 399 (2018). This effectively adopted the first approach to appealability for all federal courts and overruled the Tenth Circuit's longstanding approach of requiring a Rule 54(b) certification, as we do. *See Trinity*, 827 F.2d at 675. Because of the similarity between federal and state rules, we often look to federal precedent for assistance in interpreting our rules. *Miller v. State*, 2021 WY 100, ¶ 16, 495 P.3d 290, 294 (Wyo. 2021). We remain convinced, however, that the better rule in determining the appealability of partial judgments in consolidated cases is to require a Rule 54(b) certification, and we thus decline to adopt the rule announced in *Hall*.

appellate review of the district court's order would materially advance resolution of the litigation." *Id.*

[¶31]   This appeal meets both conditions. It presents questions of law in that it requires us to interpret provisions of the Wyoming Nonprofit Corporations Act that we have not previously addressed. Additionally, answering these questions will advance resolution of the litigation. The dissolution action is set for trial, and one ground the Spence Group alleged for dissolution is that the Board is deadlocked between the Spence and Sloan Groups. The district court's ruling that the Sloan Group constitutes the Board effectively removed that ground from the dissolution action. If we affirm, the dissolution action will proceed on the remaining grounds alleged by the Spence Group. If we reverse, it will proceed on all grounds asserted by the Spence Group, including the ground that the Board is deadlocked. *See Tram Tower*, 2022 WY 58, ¶ 41, 509 P.3d at 366 (granting writ where Court's decision would focus future proceedings); *Snell v. Snell*, 2016 WY 49, ¶ 16, 374 P.3d 1236, 1240 (Wyo. 2016) (resolution of legal issue "will materially advance the litigation as our decision will either result in a dismissal of the action or focus further proceedings"). We thus convert the Spence Group's appeal to a writ of review. Future parties seeking appeal of part of a consolidated case should seek W.R.C.P 54(b) certification.

## II. The district court properly granted the Sloan Group summary judgment on its claim that the Spence Group lacked standing to bring its derivative action.

[¶32]   In reaching its conclusion that the Sloan Group constituted the Board after the May 6, 2020, meeting, the district court found that Dana Cole and Maren Chaloupka were eligible to vote and that the Spence Group members did not retain their status as holdover directors after the May 6 meeting. We agree with the court's findings, though our reasoning differs.

### A. Dana Cole did not resign on April 13, 2020, and was therefore eligible to vote in the May 6, 2020, meeting.

[¶33]   The Wyoming Nonprofit Corporation Act provides that "[a] director may resign at any time by delivering written notice, signed either manually or in facsimile, to the board of directors, its presiding officer or to the president or secretary." Wyo. Stat. Ann. § 17-19-807(a) (LexisNexis 2021). The district court agreed with the Sloan Group that this provision requires written notice of a director's resignation. It thus concluded that Dana Cole's verbal agreement to resign during the April 2020 meeting was not effective and he remained on the Board and eligible to vote in the May 6 meeting. The Spence Group contends the court erred in its interpretation of the statute, and that the Act allows a director's notice of resignation to be oral or written.

11

[¶34]   We interpret Wyo. Stat. Ann. § 17-19-807(a) in keeping with our well-established rules of interpretation.

> In interpreting statutes, our task is to give effect to the legislature's intent. We look first to the plain meaning of the language chosen by the legislature and apply that meaning if the language is clear and unambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. All statutes must be construed in *pari materia*; and in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. If, however, the wording of a statute is ambiguous or capable of varying interpretations, we employ well-accepted rules of statutory construction.

*Matter of Longwell*, 2022 WY 56, ¶ 21, 508 P.3d 727, 733 (Wyo. 2022) (cleaned up) (quoting *Bangs v. Schroth*, 2009 WY 20, ¶ 32, 201 P.3d 442, 456 (Wyo. 2009)).

[¶35]   Neither party contends that section 807(a) is ambiguous, but they disagree over its use of the permissive term "may." *See Saunders v. Saunders*, 2019 WY 82, ¶ 16, 445 P.3d 991, 997 (Wyo. 2019) ("[T]he term 'may' is generally permissive."). The Sloan Group argues, and the district court agreed, that the term "may" in section 807(a) refers to a director's ability to resign at any time, but that the remainder of the language specifies exclusively how the resignation must be accomplished. In support of this position, it relies on the Idaho Supreme Court's interpretation of similar language.

> Idaho Code section 30–3–69(1) states: "A director may resign at any time by delivering written notice to the board of directors, its chairman, or the corporation." I.C. § 30–3–69(1). The permissive term "may" applies to the right of a director to "resign at any time." The remainder of the sentence specifies what the director must do in order to resign—"by delivering written notice to the board of directors, its presiding officer or to the president or secretary." Thus, although a director "may resign at any time," the exclusive method for doing so is "by delivering written notice...." I.C. § 30–3–69(1). *E.g.*, *Martin v. State Farm Mut. Auto. Ins. Co.*, 138 Idaho 244, 247, 61 P.3d 601, 604 (2002) ("A cardinal rule of statutory construction is that where a statute is plain, clear and unambiguous, courts are constrained to follow that plain meaning, and neither add to the statute nor take away by judicial construction.").

*Kemmer v. Newman*, 387 P.3d 131, 135-36 (Idaho 2016) (footnote omitted).

[¶36]   Although the *Kemmer* interpretation is a fair one, we reject it. We must read our Act as a whole, and above all, we must give effect to the legislature's intent. When we consider section 807(a) in that light, the *Kemmer* interpretation does not fit.  In adopting the Act, the legislature instructed:

> **Section 4.**    The legislature finds that this act is modeled from the Revised Model Nonprofit Corporation Act that was adopted by the Committee on Corporate Laws of the American Bar Association in 1987 and that the comments to the model act should be used interpreting this act.

1992 Wyo. Sess. Laws ch. 53, § 4 at 314.

[¶37]   The applicable comments to the model act provide that "[u]nder appropriate circumstances a court may find that an oral resignation combined with acts or omissions evidencing an intent to resign results in an effective resignation." *Revised Model Nonprofit Corp. Act* § 8.07 (Am. Bar Ass'n 1987). The legislature's direction that the Act be interpreted in keeping with the comments indicates it understood that its use of the permissive "may" in section 807(a) meant that there may be circumstances in which oral notice of a resignation will be adequate and effective. *See C-Ville Fabricating, Inc. v. Tarter*, 2022 WL 896104, *8 (E.D. Ky. 2022) ("Though both provisions state a director 'may' resign via written resignation, they do *not* say a director 'must' or 'may only' resign in writing. In its plain and ordinary meaning, the word 'may' is permissive and allows for discretion."); *Biolase, Inc. v. Oracle Partners, L.P.*, 97 A.3d 1029, 1033-34 (Del. 2014) (holding that use of the term "may" in statute providing that "[a]ny director may resign at any time upon notice given in writing or by electronic transmission to the corporation" was permissive and did not mean "may only"). This intent is confirmed by the Act's general notice requirement, which specifies that "[n]otice under this act shall be in writing unless oral notice is reasonable under the circumstances." Wyo. Stat. Ann. § 17-19-141(a). We must therefore conclude that an oral notice of resignation may be effective under Wyo. Stat. Ann. § 17-19-807(a), provided it is reasonable under the circumstances.

[¶38]   A director's written resignation is no doubt preferred because of the clarity it provides. *2 Fletcher Cyc. Corp.* § 346 (June 2022 update) ("[A] resignation in writing is the more orderly and proper mode of procedure."). For an oral resignation to be reasonable under the circumstances, it must offer equal clarity. *Id.* ("Oral declarations do not constitute a resignation where ambiguous and subsequent acts and declarations are entirely inconsistent with any intention to resign.") (footnote omitted); *see also C-Ville*, 2022 WL 896104, *10 ("[A]n act of resignation must be . . . an action that clearly manifests that the director has resigned his fiduciary position."); *Hockessin Cmty. Ctr., Inc. v. Swift*, 59 A.3d

13

437, 458 (Del. Ch. 2012) ("Loose and ambiguous language will not be regarded as sufficient to establish a resignation, at least where the subsequent acts and declarations of the individual are inconsistent with any such contention.").

[¶39]   During the April 2020 meeting, Gerry Spence asked Dana Cole, "Are you going to resign or not?" Mr. Cole responded, "I am." At the close of the meeting, plans were made to reconvene at a later date, and Mr. Cole stated, "I will not be joining, it's been an honor to serve with you." Thereafter, Mr. Cole began preparing a written resignation as it was his understanding that his resignation had to be in writing. He then sent an email to John Sloan informing him that he had changed his mind and would not be resigning from the Board.

[¶40]   Dana Cole's statements during the April 2020 meeting do not amount to an unambiguous oral resignation. They instead reflect an intention to resign in the future. In that regard, they are like statements rejected as resignations in *Hockessin*. In that case, a board president sent an email to certain directors informing them of the board's reconstitution and inviting them to serve on an advisory committee. *Hockessin*, 59 A.3d at 450. In response, one director responded, "I will be tendering my resignation," and "I will formally submit my resignation in writing." *Id.* at 451. The other responded that he would resign in writing and provided an effective date for the resignation. *Id.* The court held that neither director's communication was a resignation and were instead merely statements that "they would be resigning in writing in the future." *Id.* at 458.

[¶41]   Dana Cole's actions following the April 2020 meeting further belie any contention that he orally resigned during the meeting. First, he began work on a written resignation, which is not an act that is consistent with having already orally resigned. Second, and more importantly, within a couple weeks of the April meeting, he informed John Sloan that he would not be resigning. This confirms that his statements during that meeting were not themselves a resignation, but rather a statement of his intent to resign in the future. Finally, he attended and fully participated in a meeting of the Board less than a month later, on May 6. *See Hockessin*, 59 A.3d at 458 ("Loose and ambiguous language will not be regarded as sufficient to establish a resignation, at least where the subsequent acts and declarations of the individual are inconsistent with any such contention.").

[¶42]   Dana Cole's statements during the April 2020 meeting did not unambiguously accomplish his resignation, and his conduct following the meeting was inconsistent with the alleged resignation. A finding of an oral resignation would therefore not be reasonable under these circumstances, and Mr. Cole remained on the Board.

14

**B. The Board ratified Maren Chaloupka's election to the Board, and she was therefore eligible to vote in the May 6, 2020, meeting.**

[¶43]   Maren Chaloupka was elected to the Board on January 5, 2015, pursuant to an email vote initiated by Board president John Sloan. Mr. Sloan wrote (format differs from the original):

> In advance of the upcoming board meeting, I would like for us to consider adding two people to the Board. Ann Valentine has nominated Maren Chaloupka. I am nominating Imaging Spence. I believe that each bring enormous talents that we can use in furtherance of our work on behalf of TLC. Their longstanding and tireless work on behalf of the College demonstrate clearly their commitment. I would suggest that I entertain a second, then some discussion, if there is a need, and then we vote. If anyone has any objection to this process, please let me know. I am doing it this way so that, hopefully, Imaging and Maren can join us in San Diego.

[¶44]   Pursuant to the email vote, Ms. Chaloupka was elected to the Board by an 8-0 vote, including three votes from members of the Spence Group. Three directors did not vote. No one objected to the procedure, and Joseph Low and Kent Spence, both members of the Spence Group, indicated no further discussion was needed before casting their votes in favor of Ms. Chaloupka's election.

[¶45]   A corporation acts through its board, not its individual directors, and as a result, actions of a board must be taken through a meeting. *2 Fletcher Cyc. Corp.* § 392; *see also* Wyo. Stat. Ann. § 17-19-801(b) ("[A]ll corporate powers shall be exercised by or under the authority of, and the affairs of the corporation managed under the direction of, its board."). The Wyoming Nonprofit Corporation Act allows a corporation to conduct business without a meeting "if the action is taken by all members of the board [and] evidenced by one (1) or more written consents describing the action taken, signed by each director." Wyo. Stat. Ann. § 17-19-821(a). Based on this requirement, the Spence Group contends that Ms. Chaloupka's election to the Board was ineffective, and she has served at most as a de facto director, without the right to participate in the election of directors. We disagree.

[¶46]   A corporate board may ratify the informal acts of its directors by receiving and accepting the benefits of those acts.

> By the overwhelming weight of authority, when a corporation's power is vested in the directors or trustees to do particular acts or generally manage its affairs, it is vested in

them not individually but as a board. As a general rule, they can act so as to bind the corporation only when they act as a board and at a legal meeting or, unless restricted by the articles or bylaws, by unanimous written consent. If they act or give their consent separately or if they act at a meeting that is not a legal meeting, their action is not that of the corporation, although all may consent, and the corporation is not bound. ***However, if the corporation has estopped itself, or has ratified the acts of the individual directors by receiving and accepting the benefits of their acts adopted in such manner, the corporation will be bound.***

*2 Fletcher Cyc. Corp.* § 392 (emphasis added) (footnotes omitted).

[¶47]  This principle of ratification was described in *Nevins v. Bryan*, 885 A.2d 233 (Del. Ch. 2005), a case very like the one before us. In *Nevins*, the founder of a nonprofit corporation (also board chairman and executive director) brought an action seeking a declaration that he was the corporation's only valid member and that votes to remove him as a board member and executive director were invalid. *Id.* at 237. He based his claims on the allegedly invalid appointment of three of the directors and the board's refusal to allow him to participate in the vote on his removal. *Id.*

[¶48]  In abbreviated form, the underlying facts were as follows. In July 2000, Nevins nominated the three disputed directors to the nonprofit's board. *Nevins*, 885 A.2d at 238. They were elected by written consent, but as in this case, not all directors participated in the vote. *Id.* From that point forward, the disputed directors participated in board meetings and were held out as directors. *Id.* at 238-39. During a September 2001 board meeting, not attended by Nevins because he was in federal custody on "air rage" charges, counsel for the board advised that the three disputed directors had not been properly elected. *Id.* at 241. The directors then nominated and reelected all the directors, including Nevins, and ratified actions previously taken by the improperly constituted board. *Id.* This corrective action failed, however, because once the election was held, the meeting became a special meeting to elect directors, which required ten days' notice rather than the two days' notice that had been provided. *Id.* at 245.

[¶49]  The board met again on October 24, 2001, and during that meeting it voted to terminate Nevins's employment as executive director and to remove him from the board. *Nevins*, 888 A.2d at 242. Before taking that vote, the board excused Nevins from the meeting and did not allow him to participate in the vote. *Id.* at 242-43. On October 15, 2002, Nevins filed suit. *Id.* at 243. He claimed he had not been properly removed from the board because the three disputed directors had not been properly elected to the board and he had not been permitted to participate in the vote on his removal. *Id.* at 243-44. The chancery court found all Nevins's claims variously barred by the doctrines of laches,

16

equitable estoppel, and ratification. *Id.* at 247-55. The court described the requirements of ratification as follows:

> Defendants must show that, in addition to the first two elements of laches discussed above, Nevins freely did what amounts to recognition of the complained of act; or acted in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved. Acquiescence properly speaks of assent by words or conduct during the progress of a transaction, while ratification suggests an assent after the fact. Ratification may be implied from conduct, as well as expressed by words. Conscious intent is not an element, nor does ratification require a change of position or prejudice. Thus, where the conduct of a complainant, subsequent to the transaction objected to, is such as reasonably to warrant the conclusion that he has accepted or adopted it, his ratification is implied through his acquiescence.

*Id.* at 254 (quoting *Frank v. Wilson & Co.*, 32 A.2d 277, 283 (Del. 1943)) (cleaned up and footnotes omitted).[7]

[¶50]   Since her election in 2015, Ms. Chaloupka has attended every meeting of the Board, and before the May 6, 2020, meeting, no one objected to her status as a director. In her time on the Board, she has volunteered more than 2,000 hours. Her responsibilities have included reviewing and scoring all applications for the College's two annual three-week courses, which is between 220–300 applications per year, and working in curriculum and staff development.

[¶51]   The Delaware court barred Nevins's challenges to the validity of the disputed directors on grounds of laches and equitable estoppel, but we conclude that ratification is a good fit here. The Spence Group consists of five experienced attorneys who knew or should have known of their right to challenge the procedure used to elect Ms. Chaloupka to the Board. Its delay of over five years in exercising that right is patently unreasonable. *See Nevins*, 885 A.2d at 253 (finding a delay of over one year unreasonable); *Stengel v. Rotman*, 2001 WL 221512, *7 (Del. Ch. 2001) (delay of one and a half months constituted unreasonable delay when raising a "technical objection" to the validity of an election). Moreover, there is no question that the Board and the College accepted and enjoyed the benefits of Ms. Chaloupka's services during the five-plus years following her election, and no member of the Spence Group at any time challenged her as a director. In sum, the

---

[7] The first two elements of laches the court referenced in its description were "1) Nevins knew (or should have known) of his rights or claim; (2) unreasonably delayed in challenging the vote." *Nevins*, 885 A.2d at 253.

Spence Group acted in a manner that approved of Ms. Chaloupka's presence on the Board and in a manner wholly inconsistent with its present objection. Its challenge to her status as a director is therefore barred.

**C. The May 6, 2020, amendment to the bylaws and election reduced the number of directors on the Board, and the Spence Group therefore did not remain as holdover directors.**

[¶52]  Because we have affirmed the district court's ruling that Dana Cole and Maren Chaloupka were eligible to vote at the May 6, 2020, meeting, the Sloan Group had six votes at that meeting, and the Spence Group had at most five votes.[8] The majority vote thus passed the amendment to the bylaws, which reduced the number of directors from a minimum of seven and maximum of fourteen, to a minimum of five and maximum of eleven. The majority vote also reelected the Sloan Group to the Board and voted against the reelection of the Spence Group.

[¶53]  On appeal, the Spence Group does not contend that Board president did not have the authority to call the May 6 meeting, to call for the amendment to the bylaws, or to hold the election. Indeed, the Act expressly authorizes such actions and places no restrictions on the timing and number of meetings and/or elections, and the College's bylaws likewise authorized the special meeting and election of directors. *See* Wyo. Stat. Ann. § 17-19-302(a)(iii), (xi) (corporate powers to amend bylaws and hold elections); §§ 17-19-804, 805 (governing election and terms of directors); §§ 17-19-820 to 825 (governing meetings). The Spence Group instead contends that despite its failure to be reelected, its members continued to serve in their capacity as holdover directors. In support, it cites to the following provision of the Act:

> (d)  Despite the expiration of a director's term, the director continues to serve until the director's successor is elected, designated or appointed and qualifies, or until there is a decrease in the number of directors.

Wyo. Stat. Ann. § 17-19-805(d).

[¶54]  It is undisputed that going into the May 6 meeting, all the directors' terms had expired, and each was serving in the holdover status contemplated by section 805(d). The Spence Group contends the plain language of section 805(d) means that a holdover director remains in that capacity until his or her successor is elected, designated, or appointed. It

---

[8] Because we have affirmed the district court's conclusion that Dana Cole and Maren Chaloupka were eligible to vote at the May 6, 2020, meeting, we need not address the eligibility of Kent Spence to vote. Even if Kent Spence were eligible to vote in alignment with the Spence Group, the Sloan Group would have had a six member to five voting advantage over the Spence Group.

18

thus argues that because no successors were elected to fill their positions, the members of the Spence Group continued in their holdover status. We disagree.

[¶55]   First, the Spence Group's interpretation of section 805(d) fails to give meaning to the phrase "or until there is a decrease in the number of directors." *Bernal-Molina v. State*, 2021 WY 90, ¶ 13, 492 P.3d 904, 908 (Wyo. 2021) ("We do not interpret a statute in a manner that renders any part meaningless.") (citing *Sena v. State*, 2019 WY 111, ¶ 20, 451 P.3d 1143, 1148 (Wyo. 2019)). Certainly, a director's holdover status will end if a successor is elected to that position, but it will also end in the separate event of a decrease in the number of directors. The question therefore is whether there was a decrease in the number of directors.[9]

[¶56]   After the election in the May 6 meeting, there was in fact a decrease in the number of directors. All eleven directors were nominated for reelection, but only the six members of the Sloan Group received the majority vote required for their election. That left six directors on the Board, which was a permissible minimum number of directors under the amended bylaw. Thus, following the election, the Board decreased from eleven members to six members. That decrease in the number of directors ended the Spence Group's holdover status.[10]

[¶57]   An additional flaw underlying the Spence Group's argument is its presumption that a director in holdover status can never be required to stand for reelection. That is not the aim of the holdover doctrine. The holdover doctrine is intended to give continuity to a corporate organization in the event a board fails to hold elections and the terms of all its directors expire, or enough expire before reelection that there can be no quorum. 2 *Fletcher Cyc. Corp.* § 344. That is its sole purpose, and nothing in the law precludes a holdover director from being subject to an election. Indeed, the College's bylaws provide that "a Director may be re-elected for an additional term by an appropriate vote of the Board of Directors," and they thus contemplate that directors will be subject to continuing elections.

---

[9] For this reason, we are unpersuaded by the Delaware authority the Spence Group cites. The Delaware law does not contain the same language as Wyoming's Act and instead allows a director's holdover status to continue until a successor is elected or the director resigns or is removed. *See Kalageorgi v. Victor Kamkin, Inc.*, 750 A.2d 531, 540 (Del. Ch. 1999) ("Under Delaware law, each director 'shall hold office until such director's successor is elected and qualified or until such director's earlier resignation or removal.'").

[10] In this regard, our reasoning differs from that of the district court. We do not conclude that the amendment to the bylaws triggered the need for an election or decreased the number of directors. As discussed above, neither the Act nor the bylaws restricted the Board's president from calling a special meeting or election, and likewise neither the Act nor the bylaws mandated an election based on the amendment to the bylaws. Additionally, the amendment to the Board's size, which changed it from a range of seven to fourteen directors to a range of five to eleven directors did not actually affect the Board's size because the Board at that time had eleven directors, which was within the amended range. In this case, it was the actual election itself that decreased the number of directors.

[¶58] Following the May 6, 2020, election, the Board decreased in size from eleven to six directors, and the Spence Group's holdover status therefore ended. In keeping with the holdover doctrine's purpose, the newly elected Board was duly and fully constituted, and able to continue the business of the College.

**D. Because no member of the Spence Group remained on the Board after the May 6, 2020, meeting, the Spence Group lacked standing to bring its June 22, 2020, derivative action.**

[¶59] The Spence Group filed its June 22, 2020, complaint as a derivative action pursuant to Wyo. Stat. Ann. § 17-19-630. A derivative action may only be brought by a corporation's member or director, and the statute requires that each complainant be a member or director at the time of filing.[11] Wyo. Stat. Ann. § 17-19-630(a), (b). Because no member of the Spence Group remained on the Board after May 6, 2020, it did not have standing to bring its derivative action pursuant to Wyo. Stat. Ann. § 17-19-630(a). *See Matter of Phyllis v. McDill Revocable Tr.*, 2022 WY 40, ¶ 29, 506 P.3d 753, 762 (Wyo. 2022) (statutory standing requires that plaintiff have a cause of action under statute).

### *III. The district court did not abuse its discretion in denying the Spence Group's request to pursue an equitable derivative claim.*

[¶60] "Requests for equitable relief are matters over which the district court exercises broad discretion." *EME Wyo., LLC v. BRW E., LLC*, 2021 WY 64, ¶ 36, 486 P.3d 980, 990 (Wyo. 2021) (quoting *Harber v. Jensen*, 2004 WY 104, ¶ 8, 97 P.3d 57, 60 (Wyo. 2004)). We find no abuse of discretion in the district court's rejection of the Spence Group's equitable claim.

[¶61] First, equity may not be invoked as a means to negate statutory intent. *Estate of Seader*, 2003 WY 119, ¶ 23, 76 P.3d 1236, 1244 (Wyo. 2003) ("Equity 'arose in response to the restrictive and inflexible rules of the common law, and not as a means of avoiding legislation that courts deemed unwise or inadequate.'") (quoting *Lankford v. Wright*, 489 S.E.2d 604, 608 (N.C. 1997). We have explained:

> A court of equity has no more right than has a court of law to act on its own notion of what is right in a particular case; it must be guided by the established rules and precedents. Where rights are defined and established by existing legal principles, they may not be changed or unsettled in equity. A court of equity is thus bound by any explicit statute or directly applicable rule of law, regardless of its views of the equities.

---

[11] The College had directors, but no members.

20

*Seader*, 2003 WY 119, ¶ 23, 76 P.3d at 1244-45 (quoting *Lankford*, 489 S.E.2d at 608).

[¶62]   Wyo. Stat. Ann. §§ 17-19-630(a) and (b) clearly express the legislature's intent that only a director or member may bring a derivative action and "each complainant shall be a member or director at the time of bringing the proceeding." Equity does not permit this Court or any court to expand the statutorily defined list of those eligible to bring a derivative action. *See In re Est. of Scherer*, 2014 WY 129, ¶ 12, 336 P.3d 129, 133 (Wyo. 2014) ("We cannot create an ambiguity within the statute by asking whether we should apply an equitable doctrine to broaden the class of persons identified by the statute.") (quoting *Seader*, 2003 WY 119, ¶ 27, 76 P.3d at 1245).

[¶63]   In any case, a "mainstay of equitable relief is that equity will not be invoked if an adequate remedy at law exists." *McNeill Fam. Tr. v. Centura Bank*, 2003 WY 2, ¶ 17, 60 P.3d 1277, 1285 (Wyo. 2003) (citing *Texaco, Inc. v. State Bd. of Equalization*, 845 P.2d 398, 402 (Wyo. 1993)). The Spence Group's dissolution and derivative complaints made similar allegations and sought nearly identical relief, and the dissolution complaint remains pending and set for trial. In fact, the Spence Group's brief argues it should be allowed to pursue its derivative action to remove the Sloan Group as Board members "because of their 'fraudulent or dishonest conduct, or gross abuse of authority or discretion, with respect to the corporation.'" At the same time, the district court's order dismissing the derivative complaint states, "The Spence Group's claims for judicial removal of the Sloan Group surrounding Plaintiffs' claims of abuse of authority or discretion arising from numerous actions on the behalf of the Sloan Group remain before the Court." Given the pending dissolution action, we can find no abuse of discretion in the district court's ruling that the Spence Group failed to show it does not have an adequate remedy at law. *McNeill Fam. Tr.*, 2003 WY 2, ¶ 17, 60 P.3d at 1285 ("As one seeking the benefits of equity, Centura must show it had no adequate remedy at law.") (citing *BHP Petroleum Co., Inc. v. Okie*, 836 P.2d 873, 876 (Wyo. 1992)).

[¶64]   Affirmed.

KAUTZ, J., specially concurring.

[¶65]  I fully concur in the result of the majority opinion.  I cannot concur, however, in the majority's conclusion that Wyo. Stat. Ann. § 17-19-807(a) (LexisNexis 2021) permits a nonprofit board member to resign verbally, and not in writing, whenever "it is reasonable under the circumstances."  Such a conclusion is contrary to the plain language of the statute and effectively re-writes it, eliminating the requirement that a resignation be written.

[¶66]  Section 17-19-807(a) is unambiguous.  The majority opinion does not find the statute ambiguous, and indeed, it is not.  It simply states:  "A director may resign at any time by delivering written notice, signed either manually or in facsimile, to the board of directors, its presiding officer or to the president or secretary."  The word "may" applies only to the phrase which follows it:  "resign at any time."  As a permissive term, the word "may" indicates that a nonprofit director is permitted to submit a resignation at any time (as opposed to some specified or limited time).  The remainder of the statute, specifying the method of submitting a resignation, is not modified by "may."

[¶67]  The above is the only possible reasonable construction of the statute.  No principle of the English language would view the word "may" as applying to the term "written notice," making the giving of a written notice optional.  Construing the statute in a way that makes giving written notice optional strays from the legislature's intent as expressed in the statute.  It results in a vague drafter's comment overriding the express language used by the legislature.  See In re JB, 2017 WY 26, ¶ 15, 390 P.3d 357, 361 (Wyo. 2017) (a statute should not be interpreted in a manner which strays from the legislature's intent and leads to absurd results).  The majority's conclusion that the statute makes giving written notice optional re-writes the statute by entirely eliminating the word "written."  Courts are not the legislature and must not re-write what the legislature adopts.  Triangle Cross Ranch, Inc. v. State, 2015 WY 47, ¶ 18, 345 P.3d 890, 894 (Wyo. 2015) ("'[A] court cannot, under the guise of its powers of construction, rewrite a statute, supply omissions, or make other changes[.]'") (quoting In re Adoption of Voss, 550 P.2d 481, 484 (Wyo. 1976)).

[¶68]  The majority re-drafts § 17-19-807(a) on the basis of a statement included in the session laws when Wyoming adopted this version of the Revised Model Nonprofit Corporation Act.  1992 Wyo. Session Laws ch. 53, §4 at 314.  There the legislature stated comments from the Revised Model Nonprofit Corporation Act "should be used in interpreting this act."  Id.  In this case, no interpretation is required or appropriate.  The statute is plain and unambiguous and speaks for itself.  When a statute is plain and unambiguous, we construe it solely according to the language in the statute, without resort to other sources or principles of statutory construction.

[¶69]  Over a century ago, this Court said:  "If the language employed [in a statute or constitution] is plain and unambiguous, there is no room left for construction."  Rasmussen v. Baker, 7 Wyo. 117, 50 P. 819, 821 (1897).  That principle has been restated countless

times, most recently in Roman v. State, 2022 WY 48, ¶ 15, 507 P.3d 453, 457 (Wyo. 2022): "When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction." This principle dictates that we not resort to external sources, including drafter's comments, to construe plain and unambiguous language. No additional construction or interpretation is needed or appropriate.

[¶70] The majority asserts it is necessary to consult the comments from the revised model act in order to give effect to the legislature's intent. Even if we consider the comments from the revised model act, they do not authorize unwritten resignations whenever "reasonable under the circumstances." To properly understand the comment, it is necessary to read it in its entirety. The full comment to Section 8.07 of the Revised Model Nonprofit Corporation Act states:

A director may resign at any time by delivering written notice as set forth in section 8.07. The notice may be effective when delivered, unless it specifies a later effective date. Section 1.41 governs the effective date of a notice. In resigning, directors must meet their obligations under section 8.30 [(which address their duty of care, good faith, etc.)].

Under appropriate circumstances, a court may find that an oral resignation combined with acts or omissions evidencing an intent to resign results in an effective resignation.

If a director elected by the members resigns or ceases to serve as a director, the vacancy may be filled by the members or directors.

[¶71] The comment begins by reiterating the requirement that resignations be made by delivering written notice to the board. The statement relied upon by the majority, that "[u]nder appropriate circumstances, a court may find an oral resignation combined with acts or omissions evidencing an intent to resign results in an effective resignation," is only as a potential exception to the general rule that resignations be written. Until now, Wyoming has not identified what those appropriate circumstances might be. An obvious exception constituting "appropriate circumstances" would exist when principles of estoppel apply—a director verbally resigns so the board can select a replacement, and the board in fact selects that replacement. The Spence Group does not argue any appropriate circumstances exist which would provide an exception to the general rule requiring written notice and did not present any evidence of such circumstances in support of, or in opposition to, summary judgment.

[¶72] I conclude § 17-19-807(a) requires written notice of resignation unless the party claiming an effective verbal resignation shows appropriate circumstances that override the general rule, such as estoppel. Because the Spence Group did not present facts to establish

23

an exception to the general rule that resignations be written, and because director Cole did not submit a written resignation, I conclude he did not resign.